# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-3766

ROCCO V. PERCIAVALLE, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellee's Motion for Full Court Review

(Argued September 22, 2020                    Decided December 3, 2021)

*Kenneth H. Dojaquez*, of Topeka, Kansas, for the appellant.

*Nathan P. Kirschner*, with whom *James M. Byrne*, General Counsel; *Richard J. Hipolit*, Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; *Christopher W. Wallace*, Deputy Chief Counsel; and *Shereen M. Marcus*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and PIETSCH, GREENBERG, ALLEN, MEREDITH, TOTH, FALVEY, LAURER, and JAQUITH, *Judges*.

LAURER and JAQUITH, *Judges*, announced the judgment of the Court and filed the opinion of the Court with respect to Parts I-IV, in which BARTLEY, *Chief Judge*, and PIETSCH, GREENBERG, and TOTH, *Judges*, joined; and filed an opinion in Part V. TOTH, *Judge*, filed an opinion concurring with Part V. ALLEN, *Judge*, filed an opinion concurring in the judgment, in which MEREDITH and FALVEY, *Judges*, joined. BARTLEY, *Chief Judge*, filed an opinion dissenting in the judgment, in which PIETSCH and GREENBERG, *Judges*, joined.

LAURER and JAQUITH, *Judges*: U.S. Army veteran Rocco V. Perciavalle appeals, through counsel, a September 18, 2017, decision by the Board of Veterans' Appeals (Board) finding no clear and unmistakable error (CUE) in a 1971 rating decision and denying, as a matter of law, his motion to revise the rating decision. In a panel decision issued on September 27, 2019, the Court reversed the Board's determination that his CUE motion was prohibited as a matter of law because it depended on a changed interpretation of law, and the Court remanded for further adjudication. *Perciavalle v. Wilkie*, 32 Vet.App. 59 (2019). The Secretary timely moved for

reconsideration or, in the alternative, full court review. Based on this motion, the case was submitted to the Court for en banc consideration.[1]

The dispute centers on whether the appellant's CUE motion was based on a change in the interpretation of law and on whether any Board error in deciding that question was prejudicial. A majority of the Court agrees that the Board was wrong in denying Mr. Perciavalle's appeal as a matter of law. However, a different majority concludes that the proper remedy here is to still affirm the Board decision.[2] In our view, despite Board error in characterizing a later interpretation of an existing regulation as the only basis on which appellant asserted CUE and denying his CUE assertion as a matter of law, the only possible outcome was the Board's ultimate conclusion that VA did not commit CUE in the 1971 rating decision. So we would affirm the September 2017 Board decision for lack of prejudicial error.

## I. BACKGROUND

Mr. Perciavalle served honorably in the Army from 1962 to 1964 as a field artillery unit commander. R. at 525. He injured his left knee during service playing football at Fort Sill, Oklahoma. Record (R.) at 514, 535. In May 1966, the veteran submitted a claim for disability compensation based on his knee injury, which had required surgery. R. at 534-37. He described the nature of the injury as "removed cartilage anterior cruciate ligament & removed bone chip." R. at 535. In August 1966, a physician conducted an orthopedic examination as part of the veteran's disability evaluation. The veteran said that his left knee was "not back to normal," had a "tendency to give away at times," and bothered him going up and down stairs. R. at 512. The physician described the original diagnosis as "a torn left medial meniscus and injury to the left anterior cruciate ligament and stellate fragmentation of cartilage of [the] left femoral medial condyle," and the surgery as a "left medial meniscectomy." R. at 514. The physician diagnosed postoperative residuals and moderate anteroposterior (AP) relaxation. *Id.* He found that Mr. Perciavalle's left knee did not present "lateral relaxation, tenderness, crepitus, swelling, effusion, or limitation of

---

[1] The panel decision of September 27, 2019, is vacated, and the appeal is reinstated and resolved by this opinion.

[2] Judges Laurer and Jaquith file this opinion. Chief Judge Bartley and Judges Pietsch and Greenberg join Parts I-IV only. Judge Toth joins Parts I-IV and concurs with Part V. Accordingly, this opinion states the view of the Court with respect to Parts I-IV, and it states the nonplurality view of two judges with respect to Part V. Judges Allen, Meredith, and Falvey concur in the result.

motion," and noted that his leg had normal power and reflexes, he could squat fully, he walked without a limp, and his left thigh had improved from 1 inch smaller in circumference than the right to ¼ inch smaller. *Id.*

In September 1966, VA awarded service connection for the residuals of the veteran's left knee injury. R. at 509. The rating decision stated: "Current VA exam shows weakness and feeling of [instability] of left knee. The operative scar is asymptomatic. There is moderate AP relaxation. There is slight fullness of the infrapatellar fat pad. No other functional impairment is shown." *Id.* Mr. Perciavalle's disability was given a 10% rating for a medial meniscectomy under Diagnostic Code (DC) 5259. *Id.*

The veteran had another disability examination in July 1971. He reported some discomfort and weakness ascending and descending steps. R. at 496. An x-ray report reflected: "Left Knee: The joint space is questionably narrowed medially and there does appear to be some slight blunting of the tibial spines. On one view there is a question of nodular irregularity of the medial condyle of the femur." R. at 492. The physician found that the veteran's left knee had normal extension, flexion to 135 degrees, and no swelling or functional deficit, and that he had no quadriceps atrophy or weakness. R. at 495. However, the physician noted "very slight instability of [the] joint laterally." *Id.* He diagnosed minimal residual effects of the veteran's injury. R. at 496.

The evaluation report was referred to a rating board, which promptly determined and advised Mr. Perciavalle that: "The evidence does not warrant any change in the previous determination. Your knee condition remains 10% disabling and you will continue to receive compensation for this disability." R. at 490. The veteran did not appeal this decision, and it became final.

In February 1994, the Court decided *Esteban v. Brown*, holding that separate ratings were warranted for disfiguring facial scars, painful facial scars, and facial muscle damage resulting in mastication problems because "none of the symptomatology for any one of these three conditions is duplicative of or overlapping with the symptomatology of the other two conditions." 6 Vet.App. 259, 262 (1994).

In July 1997, VA's General Counsel (GC) issued a precedent opinion holding that "[a] claimant who has arthritis and instability of the knee may be rated separately under diagnostic

3

codes 5003 and 5257." VA Gen. Couns. Prec. 23-97 (July 1, 1997), https://www.va.gov/ogc
/opinions/1997precedentopinions.asp; *see* R. at 55-56.

In March 2015, the veteran asked the VA regional office (RO) to revise the July 1971 decision, asserting that it contained CUE. R. at 101-102. He contended that he should have received two separate 10% ratings for his knee disability, one "for slight instability of his left knee under Diagnostic Code (DC) 5257 and a separate 10% for limitation of motion of flexion and discomfort (pain) secondary to arthritis under DC 5003-5260." R. at 101-02.

In September 2015, the RO denied the CUE motion, determining that no revision of the July 1971 decision was warranted "because the decision was properly based on the available evidence of record and the rules in effect at the time the issue was considered." R. at 94. The appellant filed his Notice of Disagreement that same month. R. at 76-77. A May 2017 Statement of the Case (SOC) continued the denial of the CUE motion because the 1971 rating decision predated the VA GC opinion that allowed VA "to assign separate evaluations for instability and limitation of motion." R. at 58. Mr. Perciavalle appealed to the Board 3 days later. R. at 25.

In August 2017, the veteran submitted a letter brief to the Board, reiterating his position that he should have been awarded separate ratings in 1971 for his left knee. R. at 13-15. He emphasized that his theory of CUE was not based on a change of law during the 1990s; it was based on the incorrect application of the law as it existed when the rating decision was made in 1971. *Id.*

In September 2017, the Board relied on 38 C.F.R. § 20.1403(e) to deny Mr. Perciavalle's CUE motion, saying:

> The Veteran has not provided any evidence that, in July 1971, VA interpreted the rating schedule to allow for separate ratings for limitation of motion and instability of the same knee. Instead, the Veteran contends that a more recent interpretation of VA regulations should have retroactive effect. . . . Because a later interpretation of an existing regulation cannot constitute CUE and that is the only basis on which the Veteran asserts CUE, the Veteran's motion must be denied as a matter of law.

R. at 5-6. This appeal followed.

On September 27, 2019, a panel of this Court reversed and vacated the Board decision, remanding the matter for further adjudication. *Perciavalle*, 32 Vet.App. at 59. The panel determined that neither *Esteban* nor the VA GC opinion was a change in interpretation because a changed interpretation necessarily requires the existence of an antecedent interpretation from

which a later interpretation departs, and no such prior interpretation existed. The panel also found the Board's error prejudicial because it prevented Mr. Perciavalle from receiving a meaningful opportunity to participate in the adjudicative process.

On October 18, 2019, the Secretary filed a motion for reconsideration or, in the alternative, full court review. The panel denied reconsideration, and on May 11, 2020, the case was submitted to the Court for en banc consideration.

## II. PARTIES' ARGUMENTS

Mr. Perciavalle argues that there was CUE in the 1971 RO decision and the Board's contrary conclusion was "arbitrary, capricious, and not in accordance with the law." Appellant's Brief (Br.) at 2. He contends that the Board erred in finding that *Esteban* and the VA GC opinion changed the law because the law in 1971 already mandated a second separate rating for his arthritis or limitation of motion. Appellant's Br. at 2-5. In his responsive briefing, he asserts that his CUE challenge accords with the plain meaning of the CUE regulation, which rejects CUE motions based on changes in the interpretation of the law, not new or novel interpretations. And he maintains that his CUE motion based on the law in existence when the rating decision was made is distinct from and comports with the relevant caselaw implementing the regulation in cases where there was a change from one formal interpretation of the law—in a regulation, court decision, or VA manual— to another. *Id*.

The Secretary argues that the veteran's claim is precluded as a matter of law because he is seeking "to re-litigate and re-weigh the facts at the time of the prior final rating decision anew and hold the 1971 rating decision to a later change in regulatory interpretation," both of which are impermissible in the context of a CUE motion. Secretary's Br. at 10, 15. He adds that "novelty does not require a change, and a 'change' is not necessary in the context of a CUE motion" to defeat it because the new interpretation cannot be applied retroactively. Secretary's Motion at 5. The Secretary also argues that any error in the Board decision was not prejudicial because even if it

5

was possible that the RO could have granted separate ratings in 1971, the evidence of record at the time cannot show an undebatable outcome-determinative error. *Id.* at 6-10.

## III. LEGAL LANDSCAPE

### A. Clear and Unmistakable Error

By statute and regulation, final decisions by both VA and the Board are subject to reversal or revision on the grounds of CUE.[3] 38 U.S.C. §§ 5109A, 7111; 38 C.F.R. §§ 3.105 (2020), 20.1403 (2020). Because Mr. Perciavalle asserts that there is CUE in a VA rating decision, his motion falls under 38 U.S.C. § 5109A and 38 C.F.R. § 3.105. By statute, a veteran may seek to revise or reverse a final decision for CUE at any time and, if successful, receive retroactive benefits as if VA granted the claimed benefit in the prior decision. *See George v. McDonough (George II)*, 991 F.3d 1227, 1233 (Fed. Cir. 2021), *aff'g George v. Wilkie (George I)*, 30 Vet.App. 364 (2019), *petition for cert. filed*, No. 21-234 (U.S. Aug. 13, 2021). To do so, a claimant must allege with specificity the error VA committed in its rating decision. *Lang v. Wilkie*, 971 F.3d 1348, 1352 (Fed. Cir. 2020); *see, e.g.*, *Andre v. Principi*, 301 F.3d 1354, 1361 (Fed. Cir. 2002) ("[E]ach

---

[3] The term "clear and unmistakable error" first appeared in veterans regulations in 1928 that subjected only the decisions of rating boards to review for CUE. *Smith v. Brown*, 35 F.3d 1516, 1524-25 (Fed. Cir. 1994). In 1955, the regulation was amended to apply to rating boards and other agencies of original jurisdiction (AOJs). *Id.* at 1525. The CUE regulation was recast as § 3.105 in 1959 and amended and published in the new Part 3 of Title 38 of the C.F.R. in 1961. *Id.*; 26 Fed. Reg. 1561, 1569 (Feb. 24, 1961). Section 3.105 continued to apply to decisions by AOJs— VA ROs—but not to decisions by the Board. *Smith*, 35 F.3d at 1526-27.

In 1997, § 3.105 was codified at 38 U.S.C. § 5109A, and 38 U.S.C. § 7111 was enacted so that Board decisions could be reviewed for CUE. *Disabled Am. Veterans (DAV) v. Gober*, 234 F.3d 682, 687 (Fed. Cir. 2000), *overruled on other grounds by Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 981 F.3d 1360 (Fed. Cir. 2020). In 1999, 38 C.F.R. § 20.1403 was adopted as one of the regulations implementing section 7111. 64 Fed. Reg. 2134, 2135-36 (Jan. 13, 1999). The content of § 20.1403 was derived from rulings by the Court because Congress intended that "VA adopt the [Court's] interpretation of the term 'clear and unmistakable error'" and "not alter the standard for evaluation of claims of clear and unmistakable error." 64 Fed. Reg. at 2136. *See DAV*, 234 F.3d at 693 ("Congress intended to extend the principles underlying 38 C.F.R. § 3.105(a) to [section] 7111, which governs CUE review of Board decisions."). In *DAV*, the Federal Circuit noted that § 20.1403 was a reasonable implementation of section 7111 and the Court's decisions regarding CUE, and it found § 20.1403 to be valid. *Id.* at 697-98.

In 2019, § 3.105(a) was updated to mirror the language in § 20.1403(e). 84 Fed. Reg. 138, 142, 167-68 (Jan. 18, 2019). Based on this history of the development of the two regulations, their coincident principles and provisions, and the subsumption that occurs when decisions on issues by an RO have been decided by the Board on appeal, *see* 38 C.F.R. § 3.105(a)(5) and *Manning v. Principi*, 16 Vet.App. 534, 540-41 (2002), *aff'd*, 85 F. App'x. 216 (Fed. Cir. 2004), the Court often cites both. Neither party has suggested that §§ 3.105 and 20.1403(e) have been or should be interpreted differently, or that either the Board's citation to § 20.1403 or the 2019 modification of § 3.105(a) impacts our analysis today.

'specific' assertion of CUE constitutes a claim that must be the subject of a decision by the [Board] before the Veterans Court can exercise jurisdiction over it.").

However, "CUE proceedings are fundamentally different from direct appeals," as they are a limited statutory exception to the rule of finality. *Robinson v. Shinseki*, 557 F.3d 1355, 1360 (Fed. Cir. 2009). A CUE motion is a collateral attack of an adjudicated claim that was not appealed and became final and binding. *Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999). When challenged, the final decision benefits from a strong presumption of validity. *See Fugo v. Brown*, 6 Vet.App. 40, 44 (1993). And the challenger bears an "extra-heavy" burden of persuasion in showing error in the final decision. *Berger v. Brown*, 10 Vet.App. 166, 169 (1997).

The elements of CUE are well established: (1) "[e]ither the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied"; (2) the asserted error must be "undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made," and not merely "a disagreement as to how the facts were weighed or evaluated"; and, (3) to give rise to the need to revise the prior decision, the error must have been one that "manifestly changed the outcome at the time it was made." *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc); *see Abbott v. O'Rourke*, 30 Vet.App. 42, 46–47 (2018). "CUE is a very specific and rare kind of 'error'" of fact or law that makes it "absolutely clear that a different result would have ensued" without the error. *Fugo*, 6 Vet.App. at 43-44.

Review for CUE in a prior final decision "must be based on the evidentiary record and the law that existed when that decision was made." 38 C.F.R. § 3.105(a)(1)(iii); 38 C.F.R. § 20.1403(b)(1). The corollary to that requirement is that CUE "does not include the otherwise correct application of a statute or regulation where, subsequent to the decision being challenged, there has been a change in the interpretation of the statute or regulation." 38 C.F.R. § 3.105(a)(1)(iv); *see* 38 C.F.R. § 20.1403(d)(e). Though finality is important to promoting the efficient resolution of veterans' claims, it yields to correcting CUE by collateral attack because such corrections conform the result "to the 'true' state of the facts or the law that existed at the time

of the original adjudication." *Russell*, 3 Vet.App. at 313. So, the focal point of the CUE landscape is the state of the facts and the law when the rating decision was made.

## B. Standard of Review

"When the Court reviews a Board determination that there was no CUE in a prior final decision, the Court 'cannot conduct a plenary review of the merits of the original decision'" by VA. *Stallworth v. Nicholson*, 20 Vet.App. 482, 487 (2006) (quoting *Archer v. Principi*, 3 Vet.App. 433, 437 (1992)). Rather, the Court reviews the Board's decision on CUE to determine whether it was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law'" or unsupported by adequate reasons or bases. *Abbott*, 30 Vet.App. at 47 (quoting 38 U.S.C. § 7261(a)(3)). That standard of review "contemplates de novo review of questions of law." *Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004). Legal questions reviewed anew include whether there was a failure to apply pertinent statutes and regulations or a failure to apply them correctly. *Id.*; *see Simon v. Wilkie*, 30 Vet.App. 403, 408 (2018); *Joyce v. Nicholson*, 19 Vet.App. 36, 43 (2005). The Court also reviews de novo a Board determination of whether a veteran presented a valid CUE allegation as a matter of law. *Andrews v. Principi*, 18 Vet.App. 177, 182 (2004), *aff'd sub nom. Andrews v. Nicholson*, 421 F.3d 1278 (Fed. Cir. 2005); *Phillips v. Brown*, 10 Vet.App. 25, 30 (1997). So we review the Board's denial of Mr. Perciavalle's motion "as a matter of law" under the nondeferential de novo standard. *See Phillips*, 10 Vet.App. at 30.

## C. Rating Separate Disabilities

> Since its inception in 1921, the rating schedule has included separate provisions for evaluating knee instability, limitation of leg extension, and meniscal problems [and] . . . no portion of the rating schedule pertaining to the knees [has] included an express prohibition on separate evaluation of those manifestations of disability, despite numerous amendments.

*Lyles v. Shulkin*, 29 Vet.App. 107, 115 (2017).[4] In contrast, "[t]he rating schedule is replete with rules that prohibit separate evaluation of other disabilities." *Id.* at 114. Four of the six examples of such prohibitions cited in *Lyles* have been in effect since 1964. *See* 38 C.F.R. §§ 4.96 (respiratory conditions), 4.113 (abdominal conditions), 4.114 (digestive conditions), and 4.115 (heart diseases

---

[4] *Lyles* illustrates the superficiality of the judgment concurrence's claim that citation to post-1971 authority taints, corrupts, or is unfaithful to proper plain meaning circa-1971 analysis. *See post* at 39-40; *cf. id.* at 41 ("Such citations could certainly provide context."). Later opinions obviously were not available to rating officials in 1971, but it does not follow that we must discard the opinions' historical surveys or replicate them without citation as if they are uniquely ours. The information surveyed was there for rating officials in 1971—and for 50 years beforehand—as well as for the Board in 2017, though the latter plainly ignored it.

8

and nephritis) (1964). Given this history of expressly forbidding separate evaluation of other disabilities, "the lack of an express bar to separate evaluation of knee disabilities in [38 C.F.R.] § 4.71a must be read as a deliberate decision to permit separate evaluation." *Lyles*, 29 Vet.App. at 115; *see Buczynski v. Shinseki*, 24 Vet.App. 221, 227 (2011) (explaining that including limitations in one DC but not in a related DC indicates that their omission was intentional).

"[I]f an injury or disease manifests with two different disabilities, then two separate ratings should be awarded." *Tropf v. Nicholson*, 20 Vet.App. 317, 321 (2006); *see* 38 C.F.R. § 4.25(b) (2020). Section 4.25(b) provides: "Except as otherwise provided in [the rating] schedule, the disabilities arising from a single disease entity . . . are to be rated separately as are all other disabling conditions, if any." Subsection (b) was added to § 4.25 in 1989, 54 Fed. Reg. 27,161, 27,162 (June 28, 1989), but § 4.25 has contemplated combining separate ratings for different disabling conditions since its inception. 29 Fed. Reg. 6718, 6720-21 (May 22, 1964). Another general policy in rating disabilities—also present since 1964—prescribes "avoidance of pyramiding." 38 C.F.R. § 4.14 (1964). Section 4.14 begins: "The evaluation of the same disability under various diagnoses is to be avoided," and ends: "[T]he evaluation of the same manifestation under different diagnoses [is] to be avoided." [5] *Id.* Properly read, § 4.14 and § 4.25 are complementary provisions instructing VA to rate only distinct manifestations separately. *See Fanning v. Brown*, 4 Vet.App. 225, 230 (1993). "Of course, it is possible for a veteran to have separate and distinct manifestations attributable to two different disability ratings, and, in such a case, the veteran should be compensated under different diagnoses." *Id.* The anti-pyramiding rule means "that the rating schedule may not be employed as a vehicle for compensating a claimant twice (or more) for the same symptomatology[ because] such a result would overcompensate the claimant for the actual impairment of his [or her] earning capacity." *Brady v. Brown*, 4 Vet.App. 203, 206 (1993).

### D. *Esteban* and the VA General Counsel's Opinion

The Court's 1994 *Esteban* decision synthesized *Brady* and *Fanning* in holding that distinct and separate symptomology arising from the same injury should be rated separately.[6] *Esteban*,

---

[5] Section 4.14 also provides: "Disability from injuries to the muscles, nerves, and joints of an extremity may overlap to a great extent, so that special rules are included in the appropriate bodily system for their evaluation." There is no argument that a special rule applies here.

[6] In *Esteban*, the veteran's injuries to his face in a motor vehicle accident resulted in disfigurement, painful

6 Vet.App at 261-62. Nearly 3 decades before *Esteban*—and before this Court and the U.S. Court of Appeals for the Federal Circuit were created—the U.S. Court of Claims[7] considered VA's Schedule for Rating Disabilities and its pyramiding prohibition in the context of an Air Force colonel's claim for disability retirement pay at a higher rating. In *Wolf v. United States*, the Court of Claims held that separate ratings for resections of the large and small intestines did not constitute improper pyramiding because the manifestations of the resections—the symptoms produced by them—were separate and distinct. 168 Ct. Cl. 24, 31 (1964).

In 1997, the VA GC issued the precedent opinion to address the question whether a claimant could receive separate ratings for arthritis and instability of the knee under Diagnostic Codes 5003 and 5257, respectively.[8] G.C. Prec. 23-97; *see* R. at 55-56. After advising that she knew of "no formal position taken by the Veterans Benefits Administration on this issue," the GC answered the question affirmatively. G.C. Prec. 23-97, at 1. She observed that "DC 5257 provides for evaluation of instability of the knee without reference to limitation of motion," and conversely, DC 5003 provides for rating arthritis on the basis of limitation of motion without reference to knee instability. *Id.* Noting that the pyramiding prohibition in § 4.14 applied to the evaluation of the same disability or manifestation under different diagnoses, the GC concluded: "[s]ince the plain terms of DC 5257 and 5003 suggest that those codes apply either to different disabilities or to

_____

scars, and facial muscle damage resulting in problems with mastication—symptomatology the Court found separate and distinct rather than duplicative or overlapping, and thus warranting separate ratings. 6 Vet.App. at 259-62.

[7] When the Federal Circuit was created in 1982, the judges of the Court of Claims continued in office as judges for the Federal Circuit. Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, § 165, 96 Stat. 25, 50.

[8] That question was before the Board on remand from the Court in the nonprecedential case *McAdory v. Brown*, 15 Vet.App. 387 (table), 1997 WL 288699 (May 2, 1997), and other unspecified cases. In *McAdory*, the Court held that the Board "erred in not addressing whether, under *Esteban*, . . . symptomatology for a rating under DC 5257 is duplicative or overlapping with the symptomatology for a rating under DC 5010 and DC 5003." 1997 WL 288699, at *2. The Board had considered "all possible diagnostic codes which [might] be applicable," found that rating the veteran's knee disability under DC 5257 was "most appropriate," and concluded that an "increased rating [was] not supported by the evidence of record." *Id.*

different manifestations of the same disability, the evaluation of knee dysfunction under both codes would not amount to pyramiding under section 4.14." G.C. Prec. 23-97, at 2.

## IV. THE BOARD'S ERRORS

### A. Misstating the Veteran's CUE Motion

As previously noted, the VA GC opinion confirmed: "A claimant who has arthritis and instability of the knee may be rated separately under diagnostic codes 5003 and 5257." R. at 56. In the case before us, the Board considered that holding a change in interpretation that could not be the basis for a CUE challenge, per § 20.1403(e).[9] R. at 6. There are several problems with that determination. The most obvious error is that the Board, in its penultimate sentence, mischaracterized the veteran's argument. The Board wrote: "Because a later interpretation of an existing regulation cannot constitute CUE and that is the only basis on which the Veteran asserts CUE, the Veteran's motion must be denied as a matter of law." R. at 6. The veteran's actual argument was that the law had always permitted separate evaluations and that the CUE was incorrectly applying the law that existed at the time of the July 1971 rating decision. R. at 13-14.

The veteran's March 2015 CUE motion, submitted on his behalf by a non-attorney representative, contended that the rating specialist committed CUE in 1971 by failing to assign, in addition to the veteran's existing 10% disability rating, a separate 10% rating under DC 5003-5260 for limitation of motion secondary to "degenerative changes (arthritis)" in his left knee. R. at 101-02. He also argued that the DC for his original 10% rating should have been changed from 5259 (for symptomatic cartilage removal) to 5257 based on instability, but specifically sought corrective action based on CUE only to add the separate 10% rating under DC 5003-5260. *Id.* The motion specifically cited 38 C.F.R. § 3.105, Court cases setting forth the test for determining whether there was CUE in a rating decision, and the evidence he contended entitled him to the additional rating: "X-ray evidence dated July 8, 1971, compared to the X-ray evidence dated August 5, 1966, clearly show[ed] degenerative changes in the veteran's left knee." R. at 102. In May 2017, the RO denied Mr. Perciavalle's motion based upon the RO's assertion that VA was not allowed to assign separate

---

[9] As previously indicated, *supra* note 3, 38 C.F.R. § 3.105, rather than 38 C.F.R. § 20.1403, is the governing regulation for the veteran's claim of CUE in a VA rating decision, but the distinction is not significant in this appeal.

11

evaluations for instability and limitation of motion until the VA GC opinion was issued.[10] R. at 58.

In August 2017 the same non-attorney representative submitted a letter to the Board that said:

> We are not arguing the 1997 General Counsel opinion or any VA <u>rules</u> after the 1971 rating decision. We contend that the law has always permitted that a separate evaluation can be applied for DC 5257 based on instability and a separate evaluation can be applied for loss of range of motion under DC 5003-5260 or due to pain/functional loss under 38 CFR §§ 4.40, 4.59. All regulations that applied to this claim have not materially changed since 1971. . . . [W]e contend that corrective action should be taken under the provisions of 38 CFR § 3.105(a) to correctly apply the law that was in existence at the time of the July 22, 1971 rating decision.

R. at 13-14 (emphasis in original). The Board's assertion that "a later interpretation of an existing regulation" was "the only basis on which the Veteran assert[ed] CUE" was plainly wrong.

The letter by the veteran's representative also stated that "there [was] no bar to the retroactive effect of *Esteban*" because it did not change the law or lead to any change in the rating schedule or regulations. R. at 14. The judgment concurrence uses that statement to overwrite the veteran's specific contention that the 1971 law required corrective action. Then it assesses the veteran's CUE motion as otherwise inadequately pled. Neither position is supported by our caselaw or consonant with the veteran-friendly system Congress created. *See Henderson v. Shinseki*, 562 U.S. 428, 440-41 (2011); *Cacciola v. Gibson*, 27 Vet.App. 45, 58 (2014).

### B. Failing to Sympathetically Construe the Veteran's Motion

The Government's interest in veterans cases is that justice be done, and the systemic fairness essential for securing justice includes a duty to construe veterans' submissions sympathetically, especially when the veteran is self-represented or represented by someone who is not a licensed attorney. *See Comer v. Peake*, 552 F.3d 1362, 1367-69 (Fed. Cir. 2009). This principle of sympathetic construction applies to CUE motions. *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001). *Roberson* requires the RO and the Board to fully and sympathetically develop a veteran's CUE motion to its optimum before deciding it. *Andrews*, 421 F.3d at 1282-83. That task requires a high degree of care in the context of the requirement that CUE motions be

---

[10] The RO noted that the VA GC opinion stemmed from an unnamed Court of Appeals for Veterans Claims decision from 1997. R. at 58. It is unclear whether the RO was mistakenly referring to *Esteban* (which was decided in 1994), or to *McAdory*, the 1997 nonprecedential decision remanding for the Board to address the impact of *Esteban* on knee symptomatology.

pled with specificity because denial of a CUE motion may foreclose any further attempt at revision. *Acciola v. Peake*, 22 Vet.App. 320, 326 (2008). In this case, the Board completely failed to fulfill its requirement to sympathetically construe the CUE motion submitted on Mr. Perciavalle's behalf by his non-attorney representative.

By recasting the veteran's motion as based solely on the retroactive application of a change in the law, the Board turned the sympathetic construction requirement upside down. And the judgment concurrence endorses the Board's maneuver by purporting to divine the veteran's true intention and attempting to fill gaps in the Board's decision, and the Secretary's defense of it, to prop the decision up. As the partial concurrence explains, a threshold problem is that the veteran's sole reference to retroactivity was in his representative's letter to the Board, responding to the RO's decision; it was not presented to the RO and thus not properly before the Board. *See Jarrell v. Nicholson*, 20 Vet.App. 326, 332 (2006) (en banc). Moreover, even if the Board could reach the retroactivity issue, it was not free to liberally construe the veteran's pleadings *un*sympathetically by subsuming a valid CUE theory in one it finds invalid. Such subsumption violates the basic requirement to decide all CUE issues specifically raised. *See Comer*, 552 F.3d at 1367 (finding that VA is obligated to determine claims raised by the evidence).

Sympathetically construed as written (rather than as reimagined), the veteran's CUE motion was not subject to denial "as a matter of law." That determination is reserved for allegations that could not possibly constitute CUE, such as a CUE motion based on a breach of the duty to assist, *see Robertson v. Shinseki*, 26 Vet.App. 169, 176 (2013); a second CUE challenge for a single claim, *see Hillyard v. Shinseki*, 24 Vet.App. 343, 354 (2011), *aff'd*, 695 F.3d 1257 (Fed. Cir. 2012); a CUE allegation that relies on a later change in the law, *see Lamb v. Peake*, 22 Vet.App. 227, 235 (2008); and a motion challenging an RO decision subsumed by a Board decision. *See Jones v West*, 250 F.3d 753 (Fed. Cir. 2000); *Manning*, 16 Vet.App. at 541.

The judgment concurrence finds no fumble by the Board because it believes that the veteran's CUE allegations are so completely deficient as to be "non-existent." *See post* at 42. It notes that 38 C.F.R. § 20.1404(b) provides for dismissal of deficient CUE motions "without prejudice to refiling."[11] And it faults the Court for precluding a related future CUE motion. But its targeting is off, for it is the Board that accomplished what the judgment concurrence decries. The

---

[11] Since the veteran alleged CUE in the rating decision, the governing regulation actually is 38 C.F.R. § 3.105(a)(1)(vii)(B), which sets forth pleading requirements that correspond with those in 38 C.F.R. § 20.1404(b).

Board preclusively denied Mr. Perciavalle's CUE motion, it did not dismiss the motion without prejudice. The Federal Circuit has made clear that "CUE assertions that fail to satisfy pleading requirements must be *dismissed without prejudice* to refiling, and may not be denied." *Simmons v. Principi*, 17 Vet.App. 104, 114 (2003) (citing *DAV*, 234 F.3d at 699). The Court went on to specify the Board's responsibility, holding that "the proper remedy for the Board, when confronted with an inadequately [pled] CUE claim, . . . is to dismiss that challenge without prejudice." *Simmons*, 17 Vet.App. at 114. By neither dismissing the veteran's motion without prejudice nor adjudicating it on its merits, the Board improperly imposed the worst of all possible outcomes for the veteran—a preclusive denial "as a matter of law."

C. Failing To Adjudicate the Veteran's Challenge to the Application of the 1971 Law

The Board's words and deed show that it did not find that the veteran's CUE motion failed the specific pleading requirement, so the judgment concurrence's addition of this alternative explanation is misplaced. Moreover, a sympathetic reading of the actual CUE motion shows that it asserts a cognizable challenge that was due a decision on its merits.

The judgment concurrence's contrary contention flows from its conflation of the pleading requirements and the appellant's burden of persuasion. *See post* at 38-42. Our colleagues want claimants to develop and supply "esoteric legal arguments" citing cases, using terms of art like "implausible," and analyzing regulations and contemporaneous interpretations of them to explain how the CUE elements are satisfied. These points are excellent as suggestions, but they do not reflect the lower threshold veterans must clear to get their motions adjudicated and would set too stingy a standard for pleadings by veterans and their non-attorney representatives.

"[A] sympathetic reading of a CUE motion requires the Secretary to fill in omissions and gaps that an unsophisticated claimant may leave in describing his or her specific dispute of error with the underlying decision." *Acciola*, 22 Vet.App. at 326–27. Put another way, "a sympathetic reading of the CUE theory may result in clarifying modifications." *Canady v. Nicholson*¸ 20 Vet.App. 393, 402 (2006). And CUE allegations that are "rough but recognizable" must be adjudicated. *Acciola*, 22 Vet.App. at 326.

The discussion of *Berger* in the judgment concurrence illustrates the conflation problem. *See post* at 38-42. In *Berger*, neither the Board nor the Court sanctioned the sort of summary action imposed on Mr. Perciavalle. Both the Board and the Court went beyond their determination that a case that invalidated a portion of a regulation could not be applied retroactively to demonstrate

14

CUE. The *Berger* Board and then the Court each analyzed both the facts of the case and the law that applied when the benefits decision was made by the RO and determined, on the facts presented, that the adjudicator's actions accorded with the plain meaning of the statute, regulations, and manual in effect at that time. 10 Vet.App. at 167-70. Mr. Perciavalle was not afforded the same consideration of his motion. But Mr. Perciavalle's CUE motion did echo the CUE theory *Berger* endorsed—alleging that "the RO's interpretation of the plain meaning of the law was clearly and unmistakably erroneous," 10 Vet.App. at 170—when his motion is read sympathetically, as required.

*Lamb* makes the distinction between pleading and persuasion even clearer. In *Lamb*, the veteran's CUE motion—prepared by his attorney—rested, in part, on *Hyson v. Brown*, 5 Vet.App. 262, 265 (1993), which imposed a duty on VA under 38 C.F.R. § 3.655 to show, before suspending benefits, that the veteran lacked good cause to miss a physical examination scheduled in conjunction with a compensation claim. *Lamb*, 22 Vet.App. at 233. The regulation in effect in 1957, when Mr. Lamb's benefits were suspended, did not expressly impose such a burden on VA. *Id.* The CUE motion also alleged that the veteran had good cause for missing the examination, so VA suspended his benefits "without observance of applicable law and regulation." *Id.* at 234. The Court observed: "Charitably interpreted, appellant's allegations of CUE are twofold and are stated in slightly different terms," so they "must be addressed separately." *Id.* The Board had dismissed Mr. Lamb's CUE motion for insufficiency of pleading, but the Court held that the Board erred by not addressing the two aspects of the motion on their merits. *Id.* However, the Court found that the error in dismissing the challenge based on *Hyson* was not prejudicial because the "correct application of a statute or regulation as it was understood at the time does not retroactively become CUE where, subsequent to the decision challenged, there has been a change in the interpretation of the statute or regulation." *Id.* at 235. But the Court reversed "the Board's decision dismissing a claim of CUE based on a failure to correctly apply regulations in effect" at the time of the decision, and the Court remanded for adjudication of that CUE contention on its merits. *Id.* at 237. In doing so, the Court observed:

> The appellant also alleges that VA failed to properly apply regulations . . . .
> The Court notes that he does not support his argument about the meaning of "good cause" with any authority that existed in 1957 that demonstrates that the regulation was understood as he suggests. Nor has the appellant even cited any current authority supporting his interpretation of "good cause." However, at this juncture,

15

that is not the Court's concern. The issue before the Court is whether the allegation of CUE was pled with sufficient specificity so that, assuming its truth and legal viability, it would satisfy the three elements required to find that the challenged final decision was clearly and unmistakably erroneous. Unlike appellant's reliance on *Hyson* discussed above, there is no legal impediment to revising the 1957 RO decision if VA were to find that the RO had failed to properly apply the applicable regulations that were in effect at that time. Such a decision, however, is not for the Court in the first instance but for VA.

*Id.* at 235-36. The Board cited *Lamb*, R. at 6, but obviously did not follow it. That was clear error. And the judgment concurrence also missed *Lamb*'s requirement that the Board decide, on their merits, allegations of CUE based on a failure to correctly apply extant regulations.

Without addressing the application of *Lamb* to Mr. Perciavalle's more detailed contention that the RO committed CUE in the application of the regulations to his knee condition, the judgment concurrence complains that the appellant's allegation that the knee regulations permitted separate ratings in 1971 was inadequate. But the appellant's argument was accurately responsive to the error that the RO made (and the Board endorsed) in asserting that separate ratings were not *allowed* for instability and limitation of motion of the same knee. R. at 5. The appellant went further, contending that the RO's failure to assign separate ratings was CUE that required corrective action R. at 14, 101-02. And he argued that "VA regulations in 1971 mandated that separate ratings be assigned for limitation of motion and instability." Appellant's Br. at 2.

In short, *Lamb* and *Berger* emphasize that Mr. Perciavalle was entitled to a merits decision on his contention that the rating specialist committed CUE in 1971 by incorrectly applying the regulatory diagnostic codes in effect at that time to specified medical evidence and failing to assign a separate 10% disability rating for degenerative changes and limitation of motion in his left knee.

D. Incorrectly Barring the Veteran's Motion Because of a Later Change in Interpretation

"[C]hanges in the law subsequent to the original adjudication . . . do not provide a basis for revising a finally decided case." *Russell*, 3 Vet.App. at 313. However, as the panel decision detailed,[12] the VA GC opinion did not constitute a "change in the interpretation" of the rating regulations (within the meaning of § 3.105(a)(1)(iv) and § 20.1403(e)). The statutes and regulations governing CUE do not define "change in the interpretation." Without such a definition, we employ the fundamental canon of textual construction, giving words "'their ordinary,

---

[12] *Perciavalle*, 32 Vet.App. at 64-66.

contemporary, common meaning,'" which we may ascertain from general dictionaries. *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). In its basic definition, "change" means "to make different in some particular; alter; transform; to give a different position, course, or direction to; to replace with another; to make a shift from one to another; switch . . . ." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 206 (11th ed. 2014). Another dictionary provides an even simpler formulation, defining "change" as "make or become different," and presents an example of the term used with a direct object: "*a proposal to change the law*." NEW OXFORD AMERICAN DICTIONARY 289 (3d ed. 2010) (emphasis in original). As a third dictionary describes it, "**change** denotes a making or becoming distinctly different and implies either a radical transmutation of character or replacement with something else." WEBSTER'S NEW WORLD DICTIONARY, COLLEGE EDITION 244 (1968) (emphasis in original).

It follows that a "change in the interpretation" necessarily requires the existence of a prior interpretation that is made different, whether modified or replaced in whole; it cannot be the "first commentary" on a regulation or statute, as there exists no prior interpretation that the latter modifies, alters, or replaces. *See Jordan v. Nicholson*, 401 F.3d 1296, 1298 (Fed. Cir. 2005) (noting that VA's regulation interpreting 38 U.S.C. § 1111 constituted its "initial interpretation" of that statute). Although an initial interpretation constitutes a change from having none at all, this is obviously not the same as changing a preexisting interpretation.

Before analyzing the question presented—whether the rating schedule authorized separate ratings for arthritis and instability of the knee—the VA GC opinion readily acknowledged that this was the first Agency interpretation, noting that: "We know of no formal position taken by the Veterans Benefits Administration on this issue." G.C. Prec. 23-97, at 1. This point is dispositive: there can be no "change" in interpretation absent an existing interpretation from which a later interpretation deviates. In glossing over this admission, the Board erred in finding that the VA GC opinion constituted a change in interpretation when the opinion was rendered based on the premise that no antecedent interpretation existed.

Moreover, the text of the VA GC opinion makes clear that it arises from and reflects the plain terms of the applicable diagnostic codes and § 4.14. The VA GC opinion addresses each diagnostic code in detail, highlights the operative language of § 4.14, and then declares: "Since the plain terms of DC 5257 and 5003 suggest that those codes apply either to different disabilities or to different manifestations of the same disability, the evaluation of knee dysfunction under both

17

codes would not amount to pyramiding under section 4.14." G.C. Prec. 23-97, at 2. The VA GC opinion notes that *Esteban* also "supports the availability of separate ratings." *Id.*

As that notation suggests, our holding in *Esteban* likewise cannot be deemed a change in interpretation. On its own terms, *Esteban* did not purport to introduce a definitive interpretation of § 4.14 but merely held that the Board's denial of a higher rating did not square with its concession that the veteran had three different disabling conditions—which meant that separate ratings did not constitute pyramiding under the plain language of the regulation. 6 Vet.App. at 260-61. *Esteban* did not cite any formal interpretation by VA, only the factual findings that showed the veteran's disabilities had no duplicative or overlapping symptomatology, the regulatory language, and earlier cases from this Court that read the regulation the same way when applied to similar facts, discussing *Fanning*, 4 Vet.App. at 231, and to dissimilar ones, discussing *Brady*, 4 Vet.App. at 206-07. *Esteban*, 6 Vet.App. at 261-62. In short, *Esteban* neither proposed an interpretation of a regulation nor cited any existing interpretation; it merely applied the express provisions of §§ 4.14 and 4.25 to the facts presented.

*Esteban* thus presents a marked contrast to our rulings in *Lamb* and *Berger*. In *Lamb*, *benefits* were suspended based on a regulation, and a later court decision imposed a burden of proof not contained in the regulation's terms. The Court rejected a portion of Mr. Lamb's CUE motion because the requirement imposed by the later case did not reflect the law at the time of the benefits decision. 22 Vet.App. at 234-35. *Berger* likewise involved a CUE motion that could not succeed to the extent it was based on a later case that changed the law by invalidating a portion of a regulation. 10 Vet.App. at 169-70 (citing *Gregory v. Brown*, 5 Vet.App. 108, 112 (1993)). *Esteban* was critically different in that it neither added a new burden of proof or other requirement to a regulation nor subtracted or invalidated a portion of one.

The other cases cited by the Secretary likewise involve clear evidence of a change in the interpretation of the law. In *George I*, there were three changes in how the presumption of soundness regulation was interpreted between the 1977 Board decision claimed to have been beset by CUE and the 2016 Board decision denying that CUE motion: a 2003 VA GC precedent opinion invalidating the regulation,[13] a 2004 decision by the Federal Circuit finding that the regulation did

---

[13] *See* VA Gen. Couns. Prec. 3-2003 (July 16, 2003), https://www.va.gov/ogc/opinions/2003precedent opinions.asp.

not fulfill statutory requirements,[14] and the promulgation of an amended regulation in 2005. *George I*, 30 Vet.App. at 367-69. Though the Federal Circuit's 2004 interpretation in *Wagner* set forth what the statute had always meant, both this Court and the Federal Circuit later held that a first judicial interpretation of the statute could not be the basis for finding CUE where the regulation in existence at the time of the original decision imposed a different rule that VA adjudicators were bound to follow. *George I*, 30 Vet.App. at 375; *George II*, 991 F.3d at 1234-35; *see also Joyce v. Nicholson*, 443 F.3d 845, 848 (Fed. Cir. 2006) ("Where the regulations in existence at the time of the original decision imposed a different rule, *Wagner* cannot be the basis for a CUE claim."). The *George II* court echoed *Jordan*[15] in declaring that the appellants' argument—that their CUE motions were not premised on a change in the law—failed to appreciate that the regulation provided the initial interpretation of the statute, regardless of any inaccuracies in that interpretation subsequently identified in the later case. *George II*, 991 F.3d at 1235.

A recent nonprecedential decision by the Federal Circuit, *Steele v. McDonough*, 856 F. App'x 878 (Fed. Cir. 2021), followed *George* in concluding that a veteran could not rely on its holding in *Saunders v. Wilkie*, 886 F.3d 1356 (Fed. Cir. 2018)—that pain alone may constitute functional impairment, and thus a compensable disability—to demonstrate CUE in contrary prior Board and RO decisions. The *Steele* court explained that "[w]e expressly noted in *George* that our precedent does not support the view that a new judicial pronouncement can retroactively apply to final decisions of the VA." 856 F. App'x. at 881.[16] Though *Steele* declined to decide whether

---

[14] *Wagner v. Principi*, 370 F.3d 1089 (Fed. Cir. 2004).

[15] *Jordan* involved the same presumption of soundness regulation—an initial interpretation of the statute— the same change in interpretation via the 2003 VA GC opinion, and the same result: the Federal Circuit likewise held that applying the regulation in effect at the time of the Board decision could not be CUE. 401 F.3d at 1297-99. The *Jordan* court declared that, notwithstanding the later conclusions about the statutory requirements by VA's GC and *Wagner*, "the accuracy of the regulation as an interpretation of the governing legal standard does not negate the fact that the regulation did provide the first commentary on [the statute], and was therefore the initial interpretation of [that statute]." *Id.* at 1298.

[16] The panel in *Steele* also said: "We recently clarified in *George v. McDonough* that whether an interpretation is a first interpretation or a change in existing interpretation, it cannot serve as a basis for CUE." *Steele*, 856 F. App'x at 881. That statement must be read in context. *George* was talking about the first judicial interpretation of a statute that resulted in the court invalidating a regulation that constituted the initial interpretation of the statute and the one that was in effect when the rating decision was made. *George*, 991 F.3d at 1235. *George* was not referring to the initial interpretation of the statute, but a new interpretation that changed the initial one—whether the new interpretation was by the Agency or a court. *Id.* ("*Jordan* does not differentiate between new agency interpretations and new judicial interpretations."). Moreover, *George* illustrated that we should exercise caution in applying the Federal Circuit's nonprecedential decisions, completely rejecting the holding by a panel in *Patrick v. Nicholson*, 242 F. App'x 695 (Fed. Cir. 2007), that *Wagner* could be the basis for CUE in an earlier decision. *George*, 991 F.3d at 1231.

19

*Saunders* was a change in interpretation, *Saunders* expressly rejected the holding in *Sanchez-Benitez v. West (Sanchez-Benitez I)*, 13 Vet.App. 282, 285 (1999), *vacated in part, appeal dismissed in part sub nom. Sanchez-Benitez v. Principi (Sanchez-Benitez II)*, 259 F.3d 1356 (Fed. Cir. 2001), that pain alone could not qualify as a disability. *Saunders*, 886 F.3d at 1365-66.[17] Nothing like that happened in connection with the knee regulations at issue here.

Most importantly, Mr. Perciavalle's CUE motion does not depend on the retroactive application of *Esteban* or the VA GC opinion. His case is the flip side of *George II*, *Jordan*, and *Steele*, as well as *Lamb* and *Berger*. "VA does not commit clear and unmistakable error in a benefits claim decision when it faithfully applies a regulation as it existed at the time of decision, even if that regulation is later revised or invalidated." *George II*, 991 F.3d 1227. But it *does* commit CUE if fidelity to the regulation is lacking and the error is both undebatable and outcome determinative, even if that regulation is later validated and affirmed. In addition, however a subsequent interpretation of the law is characterized—as new, a change, or an authoritative statement—a motion alleging that VA's interpretation of the plain meaning of the law at the time of the rating decision was clearly and unmistakably erroneous states a valid CUE challenge. *See Berger*, 10 Vet.App. at 170. The CUE statutes and regulations protect and promote the faithful application of the rules as they existed at the time of the rating decision and the systemic reliance on the blend of fairness and finality. *See Russell*, 3 Vet.App. at 313. It would be nonsensical—and antithetical to the CUE regulations—for the later validation of the rating rules to foreclose accountability for undebatable error in previously applying them.[18]

E. Misunderstanding Separate Disabilities or Manifestations from a Single Injury

The Board decision and the Secretary's brief evince a misunderstanding that may explain how we got here. The Board declared: "The evaluation of the same disability or manifestation

---

[17] "In *Saunders*, the Federal Circuit overruled nearly 20 years of precedent when it held that 'pain in the absence of a presently-diagnosed condition can cause functional impairment,' which may qualify as a 'disability' under section 1110. 886 F.3d at 1368 (overruling *Sanchez-Benitez* [*I*, 13 Vet.App. at 285])." *Wait v. Wilkie*, 33 Vet.App. 8, 14 (2020); *see Saunders*, 886 F.3d at 1359 (In the decision being reversed, "The Veterans Court noted that it has applied the legal holding of *Sanchez–Benitez I* more than 100 times since that opinion issued, and that it has relied upon or affirmed the Board's application of this legal principle at least 83 times."). In 1999, our Court had interpreted the statutory use of the word "disability" and the consideration of pain in disability ratings and declared "that pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability." *Sanchez-Benitez I*, 13 Vet.App. at 285; *see Spurgeon v. Brown*, 10 Vet.App. 194, 196 (1997) (noting that the rating schedule does not provide for a separate rating for pain).

[18] There is no call to turn and face the strange when there are no changes. *Cf.* DAVID BOWIE, *Changes*, on HUNKY DORY (RCA 1971).

20

under different diagnoses constitutes pyramiding and must be avoided," citing § 4.14, and then suggests that *Esteban* and the VA GC opinion changed the interpretation of that regulation. R. at 5-6. The Secretary argues, in support of his conclusion that the veteran's appeal "is precluded as a matter of law," Secretary's Br. at 15, that: "at the time of the 1971 decision, any evaluation of the same disability or manifestation under different diagnoses constituted pyramiding," Secretary's Br. at 4; "38 C.F.R. § 4.14, as it was understood in 1971, precluded the ability to award separate evaluations of the same disability or the same manifestation under various diagnoses," Secretary's Br. at 13; and, "prior to the 1994 decision in *Esteban* and the 1997 GC opinion, 38 C.F.R. § 4.14 was interpreted as a bar to separate ratings for the same disability." Secretary's Br. at 15.

The Secretary's assertions regarding § 4.14's definition of pyramiding are accurate for both 1971 and the present day, but they do not address Mr. Perciavalle's contention that it was CUE not to rate distinct disabilities separately. As outlined above, the corollary to § 4.14 is that separate ratings for different disabilities or different manifestations are contemplated by § 4.25, and that principle is the basis for the veteran's motion. The distinction between disabilities and injuries and the diseases that cause them is part of the foundation of the system for compensation. *See* 38 U.S.C. §§ 1110, 1131 (declaring that the United States will pay compensation to veterans "[f]or disability resulting from personal injury or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty."). As used in these statutes, "disability" refers to the veteran's functional impairment, not the injury or disease that causes the disability. *Saunders*, 886 F.3d at 1363. That distinction is also an essential underpinning for the rating schedule. *See* 38 C.F.R. § 4.1 ("This rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service.").

The Board also found: "The Veteran has not provided any evidence that, in July 1971, VA interpreted the rating schedule to allow for separate ratings for limitation of motion and instability of the same knee." R. at 5. However, we know that the rating schedule did in fact allow for separate ratings in 1971 (and 50 years earlier), *see Lyles*, 29 Vet.App. at 115, and that VA's GC found no prior "formal position taken by the Veterans Benefits Administration on this issue" in 1997. VA G.C. Prec. 23-97, at 1; R. at 55. Moreover, VA demonstrated no understanding or interpretation

21

different from the regulatory language—not even in the rating decision at issue, much less in any official pronouncement.

The judgment concurrence faults the search for a prior formal interpretation, asserting that later variance from any interpretation in effect at the time of the disputed rating is sufficient to stop a CUE motion pursuant to § 20.1403(e) (and presumably § 3.105(a)(4)). *See post* at 46-47. As previously noted, the statutes and regulations governing CUE do not define "change in the interpretation." Interpretation has been defined as "the ascertainment of a text's meaning," and "'the art or process of discovering and expounding the intended signification of the language used.'" BLACK'S LAW DICTIONARY 978 (11th ed. 2019) (quoting Henry Campbell Black, HANDBOOK ON THE CONSTRUCTION AND INTERPRETATION OF THE LAWS 1 (1896)). In *George I & II*, *Jordan*, *Berger*, and *Lamb*, the Federal Circuit and our Court have looked to interpretations that might be called formal—statutes, regulations, and manuals, and VA GC opinions, and judicial pronouncements that have precedential effect. And the VA GC precedent opinion at issue, 23-97, specifically looked for a "formal position" by VA on the issue of whether the diagnostic codes authorized separate ratings for arthritis and instability and found none.

The judgment concurrence does what the Board and the Secretary did not; it says it "can point to evidence of an initial interpretation." *See post* at 45-46. But it doesn't actually deliver. Instead, it cites three cases. The first, *Fanning*, notes that the Board "properly raised the issue of pyramiding," but sets out the rule Mr. Perciavalle relies on: "it is possible for a veteran to have separate and distinct manifestations attributable to two different disability ratings, and, in such a case, the veteran should be compensated under different diagnoses." 4 Vet.App. at 230-31. In the second, an unpublished order in *Sweeney*, VA pointed to the VA GC opinion—which VA incorrectly said changed regulations—to concede remand. *Sweeney v. West*, 16 Vet.App. 403 (1999) (table) (order), 1999 WL 184869, at *1. However, the underlying decision does not mention pyramiding as a possible reason for limiting the veteran's rating but merely notes that he was diagnosed with arthritis and knee instability and not yet rated for them. *Sweeney v. West*, 16 Vet.App. 47 (1998) (table) (mem. dec.), 1998 WL 223192, at *2. The third case, a nonprecedential memorandum decision, cites the antipyramiding regulation but says only:

> The Board noted that the veteran suffered from pain in the left knee, but noted also that the recent examinations showed only moderate arthritis and slight instability and did not show significant atrophy or motion restriction. The Board

22

then rejected a rating higher than the current 30% schedular rating, which comprehends "severe" subluxation or lateral instability of the knee.

*Sanders v. Principi*, 3 Vet.App. 334, 336 (1992) (mem. dec.) (affirming the Board's determinations of the veteran's levels of impairment as findings of fact that were not clearly erroneous).

Even if the cited decisions had interpreted the relevant regulations, invoking them is not "faithful to the nature of CUE"—to use the judgment concurrence's words and logic, *see post* at 39-40—because they were rendered more than 20 years after the 1971 rating decision. Crucially, unlike *Lyles*, not one of them says anything about the law that applied in 1971. And only *Fanning* discusses the law at all, with a conclusion that supports Mr. Perciavalle's CUE motion. At this juncture, the 1964 decision of the U.S. Court of Claims in *Wolf* stands as the only identified interpretation *before* the 1971 rating decision, and it also called for separate ratings for separate symptomatology, 168 Ct. Cl. at 31, as Mr. Perciavalle contends were required in his case.

Considering *Fanning*, *Wolf*, and the other salient cases, it seems doubtful that the CUE regulations contemplate insulating rating decisions that violate the plain meaning of the law from CUE review if they are consistent with a prior rogue decision or two later authoritatively held to be wrong. Though the context is different, the conditions for deference to an Agency interpretation spelled out in *Kisor v. Wilkie* seem instructive, such as the requirement that the interpretation be the Agency's official position. 139 S. Ct. 2400, 2415-17 (2019). And the prior and subsequent interpretations the Federal Circuit and our Court have pointed to, in affirming the denial of CUE challenges to decisions in between, fulfill that test or are precedential judicial decisions. But what is most important is that we are not called upon in this case to decide what counts as a prior interpretation. The veteran's CUE motion specifically contended that his rating decision violated the plain meaning of the regulation in 1971. And when asked at oral argument whether there is evidence of VA's interpretation of the knee rating regulations in 1971, the Secretary said the plain meaning of the regulation is the only guidance we have for how the law was interpreted at that time. *See* Oral Argument (OA) at 1:13:00-1:13:10, 1:15:18-1:15:28, http://www.uscourts.cavc.gov/oral_arguments_audio.php. The Secretary did mention that there were a few Board decisions through the years invoking the antipyramiding rule to deny separate ratings, but the Secretary did not cite or provide any specific examples.[19] "[T]he RO is presumed

---

[19] Of course, "'statements and arguments of counsel are not evidence.'" *United States v. Valois*, 915 F.3d 717,

23

to have considered all applicable law, absent some showing that it did not." *Hickson v. Shinseki*, 23 Vet.App. 394, 401 (2010). That presumption stands unrebutted, and any implication by the Board and the Secretary that the VA adjudicator in 1971 concluded that separate ratings would be pyramiding is completely unsupported.

In sum, separate ratings for different knee disabilities were permissible in 1971, and the Board erred in suggesting otherwise. The Board also erred in characterizing "a later interpretation of an existing regulation" as "the only basis on which the Veteran asserts CUE," and erred in concluding that the veteran's CUE assertion "must be denied as a matter of law." R. at 6. The veteran's motion alleged CUE in how the RO applied the regulations in 1971, and the parties agreed that the measure of whether there was CUE was those regulations' plain language. In that context, the veteran was entitled to a decision on the merits of his motion.

The judgment concurrence's prediction of dire consequences from finding error in the Board's decision is belied by its "food for thought" explaining that adjudicating the veteran's CUE motion on its merits would not have been burdensome or complicated. *See post* at 48-49. The unbearable burden is restrictive gatekeeping achieved by rewriting cognizable CUE challenges to reflexively reject them. That is not doing the right thing in the right way for the right reason. Turning Mr. Perciavalle away without consideration of all of his actual CUE motion was patently an error.

## V. PREJUDICIAL ERROR AND CUE

Having found that the Board erred in foreclosing appellant's CUE allegation about the July 1971 rating decision as a matter of law, the Court turns to whether that error prejudiced appellant. And more specifically, whether the Board's failure to consider the "manifestly changed outcome" prong of a CUE analysis was prejudicial to appellant.

In our view, the Board's error is harmless. Because the Board's denial of appellant's motion to revise the 1971 rating decision would *not* have been different even if the Board committed no error in its application of the CUE regulation, the Board's error did not affect the ultimate outcome of the decision. The appellant has not shown how he might meet the extra heavy burden to establish

726 (11th Cir. 2019) (quoting *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009)). And it is doubtful that such examples could establish an Agency interpretation as its authoritative or official position, *see Kisor*, 139 S. Ct. at 2416-17, but that determination need not and could not be made without examples to consider.

undebatable outcome-determinative error in the 1971 rating decision, or how the Board's legal error impacted its conclusion that there was no CUE in that decision. We would also find that the Board's missing manifest-change-in-outcome analysis did not prejudice appellant's substantial rights. Nor was appellant deprived a chance to participate in VA's processing of his CUE allegation. What's more, on appeal, appellant fails to explain how the Board's legal error impacted its ultimate determination that the 1971 rating decision contained no CUE. And so, we would affirm the September 2017 Board decision.

## A. Taking Due Account of Prejudicial Error

Merely finding error in a Board decision or in VA's processing of a claim is not enough for the Court to remand. In exercising our appellate jurisdiction, the Court must review the record of prior proceedings and "take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b)(2). For remand to be the appropriate remedy, an error must prejudice the claimant. *Shinseki v. Sanders*, 556 U.S. 396, 411-12 (2009).

Although the "matter is somewhat more complicated in the context of CUE," this standard remains the same. *Simmons v. Wilkie*, 30 Vet.App. 267, 277-79 (2018) *aff'd*, 964 F.3d 1381 (Fed. Cir. 2020). "[W]hen the Court is determining whether any Board error is prejudicial to the appellant, the Court is considering prejudice as an original matter. . . .[and] the only way to assess any prejudice in a Board error is to consider the decision that is the subject of the CUE motion." *Id.* at 284 n.7; *see also George I*, 30 Vet.App. at 377-78 (holding in the alternative that affirmance was warranted because appellant failed to show that any error in the challenged decision would have manifestly changed the outcome). As the Court explained in *Simmons*, that consideration does not defy *Archer*'s prohibition of plenary review of the facts of the RO decision, 3 Vet.App. at 437, because *Archer* applies when the Court is determining whether the Board decision was an abuse of discretion, but harmless error analysis arises when the Court has already concluded that the Board erred and the Court is assessing whether that error was prejudicial or affected the essential fairness of the adjudication. *Simmons*, 30 Vet.App. at 284.

How does the Court conduct a prejudicial error analysis? In *Sanders,* the Supreme Court addressed this Court's statutory prejudicial error mandate and concluded that it requires us "to apply the same kind of 'harmless-error' rule that courts ordinarily apply in civil cases." 556 U.S. at

406;[20] *see* 38 U.S.C. § 7261(b)(2). The Supreme Court rejected the Federal Circuit's "complex, rigid, and mandatory" harmless-error framework that required this Court to *presume* that a notice error was prejudicial. *Sanders*, 556 U.S. at 407. The Supreme Court reasoned that presumptive prejudice is "inconsistent with the statutory requirement" to take due account of prejudicial error. *Id.* at 414. Rather, the Supreme Court said that this Court should use "case-specific applications of judgment, based on examination of the record" rather than "mandatory presumptions and rigid rules." *Id.* at 407; *see Simmons*, 964 F.3d at 1385 (quoting *Sanders*, 556 U.S. at 407).

And so this Court's harmless error inquiry must be "exceedingly broad." *Simmons,* 30 Vet.App. at 284. Our statutory obligation permits us "to go outside of the facts as found by the Board to determine whether an error was prejudicial by reviewing 'the record of the proceedings before the Secretary and the Board.'" *Mlechick v. Mansfield*, 503 F.3d 1340, 1345 (Fed. Cir. 2007) (quoting *Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007)). Indeed, fulfilling that obligation "necessarily requires" us to go beyond the Board's findings. *Wait*, 33 Vet.App. at 18. We must do so because "[t]he Board cannot predict every instance in which it might be found to have committed error" and "cannot be expected to make specific factual findings that might facilitate a prejudicial error analysis." *Vogan v. Shinseki*, 24 Vet.App. 159, 163 (2010). "If the Court's review were restricted to findings made by the Board, the usefulness of Congress's direction that we examine an error for prejudice would be marginalized as a tool for avoidance of remands that entail no realistic prospect of an outcome more favorable to a veteran." *Id.* at 163-64.

So we conduct a full review of the record to perform our statutory duty to determine whether error is prejudicial or harmless—mindful that the undertaking is an important part of our

---

[20] Criminal cases have a different paradigm, based on the principle that there are "certain basic, constitutional guarantees that should define the framework of any criminal trial" and "some errors should not be deemed harmless beyond a reasonable doubt." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017). Such errors are known as structural errors "and require reversal because they cause fundamental unfairness, either to the defendant in the specific case or by pervasive undermining of the systemic requirements of a fair and open judicial process." *Id.* at 1911. Errors found to be structural have violated defendants' right to conduct their own defense, right to select their own attorney, right to have a reasonable doubt jury instruction, right to an unbiased judge, and right to a public trial, *see id.* at 1908-10 (collecting cases), as well as their right to insist that their counsel refrain from admitting their guilt. *McCoy v. Louisiana*, 138 S. Ct. 1500, 1505-11 (2018). Even in the criminal justice system, the judicial duty to find the proper balance between the necessity for fair trials and the importance of finality of judgments means that a new trial generally will be granted as a matter of right when a structural error is preserved and raised on direct review, but when the error is raised in a collateral attack such as a claim of ineffective assistance of counsel, "finality concerns are far more pronounced" and may require a showing of prejudice to obtain a new trial. *Weaver*, 137 S. Ct. at 1913 (denying a new trial for defense counsel's failure to object to the closure of the courtroom during jury selection).

jurisdiction. *See Newhouse*, 497 F.3d at 1301-02; *see also Pitts v. Shinseki*, 700 F.3d 1279, 1286 (Fed. Cir. 2012) (concluding that an argument asserting prejudicial error "challenges the [Veterans Court's] application of law to fact and therefore falls outside this court's jurisdiction" (citing 38 U.S.C. § 7292(d)(2))); *Conway v. Principi*, 353 F.3d 1369, 1375 (Fed. Cir. 2004) ("[T]he ultimate conclusion of the effect of the rule of prejudicial error on this case is beyond our jurisdiction."). But the Court remains equally mindful to not exceed its jurisdiction. If the record contains no VA findings to support affirmance, the Court will affirm only when "the entire record makes evident that the Board could not have reached any other decision." *Tadlock v. McDonough*, 5 F.4th 1327, 1337 (Fed. Cir. 2021). And when "additional findings of fact are necessary regarding matters open to debate," it is the Board, and not the Court, which must weigh those facts in the first instance. *Id.*

Against this backdrop, the Court turns to appellant's case. As explained above, the Court holds that the Board erred in its determination that appellant's CUE allegation must be denied as a matter of law. So the Court must determine whether the Board's ultimate conclusion that the challenged 1971 RO decision contained no CUE could have been different had the error not occurred.

In its September 2017 decision, the Board found that the 1971 RO did not commit CUE because VA's ability to award separate ratings for different disabilities of the same knee was a new interpretation of law. R. at 5-6. But the Board addressed none of the CUE elements, specifically whether (1) VA incorrectly applied the rating schedule in existence at the time, (2) any such error was "undebatable" and not merely a disagreement over how VA weighed or evaluated the facts in the final decision, or (3) any error "manifestly changed the outcome" of the final decision. R. at 5-6. And so the Board made no alternative finding to support an affirmance of its decision.[21]

Appellant asserts that remand is necessary because the Board "never reached the merits" of his CUE motion. Reply Br. at 1. But he provides no reasoning for this requirement in any of his pleadings or at oral argument. The Secretary responds that appellant has an "extra heavy" burden

---

[21] Our judgment-concurring colleagues highlight the absurdity of the Board's approach in adjudicating appellant's CUE allegation. *Post* at 48-49. The full Court would not be here today had the Board merely done the work of assessing whether the facts before the RO in 1971 clearly and unmistakably showed that appellant was entitled to another rating for his right knee disability. But if VA's routine misapplication of its own regulation as written opens a floodgate, then perhaps there was a storm surge with the potential to cause greater harm that required its opening. And, as here, should the gates remain locked, then it is the facts existing in the record at the time of the challenged decision that drive that choice.

of proof to establish CUE and that the Board's ultimate conclusion on CUE in the 1971 rating decision was not prejudicial because appellant "did not meet his burden of proving an outcome-determinant error." Secretary's Motion at 10.

### B. The Only Possible Outcome

As the terms make evident, deciding whether error is prejudicial or harmless hinges on the effect of the error—whether it harmed the veteran by prejudicing the outcome of the Board's ultimate conclusion. Put simply, for an error in a Board decision to warrant remand, an appellant must persuade the Court that the error could have made a difference in the Board's decision. *See Sanders*, 556 U.S. at 413.

For remand to be appropriate, the Court need not conclude that an outcome *would* be different had VA not committed an error, only that it *could* be. *See Mayfield v. Nicholson*, 19 Vet.App. 103, 115 (2005) (rejecting the Secretary's argument that prejudice requires a showing that "the correction of the error would yield a different result"), *rev'd on other grounds*, 444 F.3d 1328 (Fed. Cir. 2006). As this Court spelled out in *Simmons*:

> [P]rejudice is established by demonstrating a disruption of the essential fairness of the adjudication, which can be shown by demonstrating that the error (1) prevented the claimant from effectively participating in the adjudicative process, or (2) affected or could have affected the outcome of the determination.

30 Vet.App. at 279. On the other hand, "a demonstration that an outcome would *not* have been different even if the error had not been committed *would* demonstrate that there was *no* prejudice." *Mayfield*, 19 Vet.App at 115 (emphasis in original). Put another away, the Board could only deny the claim.

For a CUE allegation, this includes showing that there could be a manifest change in the outcome of the prior decision. "A manifest change in the outcome of the adjudication means that, absent the alleged clear and unmistakable error, the benefit sought would have been granted at the outset." *King v. Shinseki*, 26 Vet.App. 433, 441 (2014), *aff'd sub nom. King v. McDonald*, 599 F. App'x 957 (Fed. Cir. 2015).

In a March 2015 motion to revise based on CUE, appellant alleged that, in 1971, he was undebatably entitled to separate ratings for left knee disabilities under DCs 5003 and 5257 for arthritis and instability. R. at 102; *see* R. at 492. For appellant to prevail on his CUE motion before the Board, he must meet the "extra-heavy burden" of showing that it was error for the 1971 RO not to apply the rating criteria in DCs 5003 or 5257 and that the evidence undebatably established

28

the existence of arthritis and knee instability. *See King*, 26 Vet.App. at 441; *Fugo*, 6 Vet.App. at 43. To assess prejudice, the Court must determine whether the Board might find that the record in 1971 compelled the conclusion that VA would have awarded a separate evaluation for a left knee disability. *Berger*, 10 Vet.App. at 169; *see Simmons*, 30 Vet.App. at 285; *George I*, 30 Vet.App. at 377-78.

In 1971, as now, VA had eight DCs for rating knee disabilities. Included were DC 5257 for "recurrent subluxation or lateral instability"; DC 5259 for "cartilage, semilunar, removal of, symptomatic"; and DC 5260 for "limitation of flexion." 38 C.F.R. § 4.71a, DCs 5256-5263 (1971). VA rates degenerative arthritis under DC 5003 and awards a minimal compensable rating for limitation of motion for degenerative arthritis established by x-ray findings. *See Lichtenfels v. Derwinski*, 1 Vet.App. 484, 488 (1991) (holding that, when read together, DC 5003 and 38 C.F.R. § 4.59 entitle a veteran to a minimum 10% rating "where the arthritis is established by x-ray . . . even though there is no actual limitation of motion"). In 1971, VA rated appellant only under DC 5259 for medial meniscectomy, evaluated at 10%. R. at 509.

We would find that, because appellant could not meet his burden to show a manifest change of outcome in the 1971 rating decision, the Board error did not affect its ultimate conclusion. Specifically, the evidence in 1971 does not compel the conclusion that VA clearly and unmistakably erred in not awarding a separate evaluation for left knee arthritis.[22] Appellant points

---

[22] The veteran's initial CUE motion included a statement that "the Rating Specialist did not change the DC from 5259 to 5257 based on instability[, nor] was a separate evaluation considered for the degenerative changes (arthritis) and limitation of motion flexion under DC 5003-5260." R. at 102. By its terms, this statement could be construed as asserting first a failure to assign a rating under DC 5257 for instability rather than his original rating under DC 5259, and then to add a separate other rating under DC 5003-5260. But neither the veteran's initial motion nor his later arguments assert that he should have received separate ratings for his meniscectomy residuals and instability under DCs 5259 and 5257. He has consistently maintained that, along with his initial 10% rating, he is entitled to a second, separate 10% rating for arthritis, and that is how his argument was characterized and addressed in the proceedings below. For example, the September 2015 rating decisions lists DC 5259 and DC 5257 together. R. at 95. The May 2017 SOC displaces DC 5259 with DC 5257 but still characterizes the claim for a separate rating as one for "a separate 10% for limitation of motion for flexion and discomfort secondary to arthritis." R. at 58. The veteran's August 2017 letter echoes that formulation, seeking a substituted "10% evaluation for slight instability under DC 5257 and a separate 10% evaluation for loss of range of motion due to pain/discomfort under DC 5003-5260." R. at 14.

Although the record does not reflect that VA or the Board ever interpreted his argument this way, for the sake of completeness we note that the failure to switch his rating from DC 5259 to DC 5257 alone could not constitute CUE. The veteran did not seek separate ratings under DCs 5259 and 5257, so neither VA nor the Board addressed that issue, but an argument for separate ratings under those diagnostic codes would have likewise been unavailing in this context. Under DC 5257's rating criteria in 1971, VA rated "slight" instability at 10%, "moderate" instability at 20%, and "severe" instability at 30%. 38 C.F.R. § 4.71a, DC 5257 (1971). The initial September 1966 rating decision awarding a 10% disability under DC 5259 for appellant's medial meniscectomy was based on an examination showing

29

to a July 1971 radiographic report that revealed "questionably narrowed" joint space, "slight blunting" of the tibial spines, and "a question of nodular irregularity" as undebatable evidence of arthritis. R. at 102; *see* R. at 493-96. But notation of questionable joint irregularities in an x-ray report is not an arthritis diagnosis. *See Lichtenfels*, 1 Vet.App. at 488; 38 C.F.R. § 4.71a, DC 5003. Nor does appellant explain how the x-ray evidence from 1971 supports an arthritis diagnosis. Thus, absent evidence of arthritis confirmed by x-ray, appellant can't meet his burden of showing that VA would have awarded a 10% rating for arthritis under DC 5003.

Even if the Court, or the Board, may have reached a different conclusion than the 1971 RO and determined that questionable joint irregularities show arthritis warranting a separate 10% rating, that retrospection does not establish CUE. *George I*, 30 Vet.App. at 378; *see King*, 26 Vet.App. at 442 ("[T]here will be times when the Court arrives at a different conclusion when reviewing a motion to revise a prior, final decision than it would have had the matter been reviewed under the standards applicable on direct appeal."). The evidence must be *absolutely clear* that VA erred in not granting a separate rating for arthritis. *Fugo*, 6 Vet.App. at 44. And that simply is not the case. After all, disagreeing with the weighing of evidence does not support CUE. So the Court finds that appellant fails to show that the Board erred when it found that any error in the 1971 rating decision did not manifestly change the outcome. And so despite the Board's error in rejecting appellant's CUE motion as a matter of law, the only possible outcome was the Board's ultimate determination that the 1971 rating decision contained no CUE.

### C. Harm to Appellant's Substantial Rights

In *Sanders*, the Supreme Court identified some case-specific factors a court may consider in assessing prejudice: "an estimation of the likelihood that the result would have been different" but for the error; an awareness of what body "has the authority to reach that result"; and the "error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings." *Sanders*, 556 U.S. at 411-12.

---

"weakness and feeling of instability of left knee." R. at 509. Though a rating under DC 5259 does not preclude a separate rating under DC 5257, the anti-pyramiding rule means that a veteran cannot be compensated more than once for the same manifestation of a knee disability or for overlapping symptoms that do not cause more functional impairment. *See Lyles*, 29 Vet.App. at 112-19. Since the 1971 decision continued the 10% rating based on an examination that found no weakness or functional defect but "very slight instability of joint laterally," R. at 490, 495, it cannot be undebatable that separate ratings under DC 5259 and 5257 were warranted. In other words, it is far from clear that the evidence compels the conclusion that VA clearly and unmistakably erred in not awarding a separate rating under DC 5257 in 1971.

The Supreme Court also noted that this Court's special expertise in reviewing VA decisions enables it to make "empirically based, nonbinding generalizations" about errors which have the "natural effect" of prejudicing a claimant's "substantial rights." *Sanders*, 556 U.S. at 411-12; *see Kotteakos v. United States*, 328 U.S. 750, 760 (1946) (reviewing courts may learn over time that the "natural effect [of certain errors] is to prejudice a litigant's substantial rights") (quoting H.R. REP. NO. 913, 65th Cong. (3d Sess. 1919) at 1).

The Supreme Court also recognized that some errors that could be considered harmless in other adjudicatory proceedings may be considered harmful in a veteran's case. *Sanders*, 556 U.S. at 412. This is because of the "special solicitude" Congress has expressed for veterans cases, VA's statutory duty to help veterans develop their claims, and the nonadversarial nature of VA proceedings. *Sanders*, 556 U.S. at 412. The VA claims system requires "notice and an opportunity to be heard at virtually every step." *Thurber v. Brown*, 5 Vet.App. 119, 123 (1993); *Bernard v. Brown*, 4 Vet.App. 384, 392-94 (1993) (holding that statutory and regulatory provisions provide "procedural safeguards" to "ensure a claimant's right to full and fair assistance and adjudication in the VA adjudication process").

Following *Sanders*, this Court identified some procedural errors that had the "natural effect" of harming a claimant's "substantial rights." *Sanders*, 556 U.S. at 412; *see Kotteakos,* 328 U.S. at 759. This is because some procedural errors can have an "unquantifiable" effect on the outcome of a proceeding and thus must be returned to the Board. *See Quinn v. Wilkie*, 31 Vet.App. 284, 292 (2019) ("'Where the effect of an error on the outcome of a proceeding is unquantifiable, however, we will not speculate as to what the outcome might have been had the error not occurred.'" (quoting *Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004))); *Arneson v. Shinseki*, 24 Vet.App. 379, 389 (2011) (finding prejudice when error "could have altered" the Board's determinations).

Prejudice to a claimant's substantial rights naturally stems from the deprivation of meaningful opportunities to participate in the adjudicative process, which may result from a VA failure to provide notice to a veteran of evidence necessary to substantiate a claim, *see Vazquez-Flores v. Shinseki*, 24 Vet.App. 94, 105-07 (2010), or from denial of the veteran's right to a hearing before the Board, *see Arneson*, 24 Vet.App. at 389. "An error is prejudicial when it 'affects a substantive right that a statutory or regulatory provision was designed to protect' and 'affects the

essential fairness of the adjudication.'" *Sapp v. Wilkie*, 32 Vet.App. 125, 143 (2019) (quoting *Overton v. Nicholson*, 20 Vet.App. 427, 434-35 (2006)).

We would also find that the Board's error did not have the natural effect of harming appellant's substantial rights or an "unquantifiable" effect on the outcome of the proceeding. *Wagner*, 365 F.3d at 1365. Recall that VA's processing and decision-making on CUE allegations are much different than direct appeals of nonfinal decisions. In the adjudication of a CUE allegation, VA has no duty to assist a claimant with developing a claim. *Cook v. Principi*, 318 F.3d 1334, 1344 (Fed. Cir. 2002) (holding that a breach of the duty to assist cannot form the predicate for a motion for revision of a finally decided claim based on clear and unmistakable error); *see also Szemraj v. Principi*, 357 F.3d 1370, 1376 (Fed. Cir. 2004) ("[T]he failure to assist in developing the evidentiary record cannot constitute CUE."); *King*, 26 Vet.App. at 438 (noting that the breach of the duty to assist creates an "'incomplete rather than an incorrect record'" (quoting *Caffrey v. Brown*, 6 Vet.App. 377, 384 (1994))). Indeed, review for CUE must be based on the record at the time the prior decision was made. *May v. Nicholson*, 19 Vet.App. 310, 313 (2005); 38 C.F.R. § 3.105(a)(iii). There is no factfinding or weighing of evidence—VA and the Court are explicitly prohibited from "reweighing" evidence. *Damrel v. Brown*, 6 Vet.App. 242, 245-46 (1994) (holding that appellant's contention that the RO "misevaluated and misinterpreted evidence available at the time" of the prior decision is not CUE because it merely requires reweighing the evidence).

VA's adjudication of a CUE allegation is limited to determining whether a claimant's specifically pled allegation of error within a final decision was CUE. *See Lang*, 971 F.3d at 1352. Because a CUE allegation is limited to the record as it existed at the time of the final decision and the error as pled before VA, the Court can evaluate a Board decision on a CUE allegation that lacks a manifest-change-of-outcome analysis based on the record before it. Here, the Court has everything required to determine whether appellant was harmed by the Board's ultimate conclusion that the 1971 RO did not commit CUE in its rating decision.

What's more, VA provided appellant a meaningful chance to participate in the processing of his claim at every step and discerns no procedural error. *See Simmons*, 30 Vet.App. at 285. Through his chosen representative, Veterans Advocates Group, LLC, appellant submitted a CUE motion to the RO. R. at 101-02. He then participated in an informal hearing at the RO with his representative present. R. at 32 (noting that VA held an informal hearing with the veteran's

attorney). And, on appeal to the Board, appellant presented more argument in support of his CUE allegation. R. at 13-15. At every step of the adjudication process, VA provided appellant with the chance to meet his burden to clearly and unmistakably show that the 1971 rating decision, which was presumed valid, contained an outcome-determinative error.

We also conclude that VA provided appellant with all required notice in the CUE adjudication process. In a rating decision, the RO addressed appellant's allegation that the 1971 RO's "failure to grant a 10% rating for slight instability of the left knee under DC 5257 and a separate 10% rating for limitation of motion for flexion and discomfort secondary to arthritis" was CUE. R. at 94. In an SOC, a decision review officer addressed the same CUE allegation. R. at 32-58. And the Board addressed appellant's contention that the 1971 "RO committed CUE by not granting separate compensable evaluations for limitation of motion and for instability." R. at 5. At every point in its processing of appellant's CUE allegation, VA addressed appellant's CUE allegation and provided written notice on why it found no CUE in the 1971 rating decision.

Our dissenting colleagues would hold that VA's mischaracterization of appellant's CUE allegation deprived him of the right to a decision on his CUE motion, which disrupted the essential fairness of the process. *Post* at 54. But what happened here is not the kind of situation when the error could somehow shake faith in the adjudication process. *Sanders*, 556 U.S. at 410. VA can, as it did here, reach an incorrect conclusion without preventing a claimant from participating in the proceedings or otherwise upsetting fundamental fairness. An appellant's lack of meaningful opportunity to participate in the processing of his or her claim may cause remandable harm. But an appeal to the Court is the correct recourse for an appellant to resolve harm by an error in VA's adjudication of a claim. And on appeal to the Court, for an adjudication error to warrant remand, an appellant bears the burden of showing how the outcome of a new Board decision on the claim could be different.

And now we address whether the Board's lack of manifest-change-of-outcome analysis in its adjudication of appellant's CUE allegation prejudiced appellant. This was not a procedural error that had the natural effect of harming appellant's "substantial rights" or some "unquantifiable" effect on the outcome. *See Sanders*, 556 U.S. at 412; *Wagner,* 365 F.3d at 1365. As discussed above, the Board erred in its *adjudication* of appellant's CUE allegation. The Board made an erroneous conclusion that appellant's CUE allegation hinged on a new interpretation of law and was thus precluded by law. But adjudication error does not mean procedural error. All the post-

33

*Sanders* cases when the Court found prejudice to a claimant's substantial rights naturally stemmed from VA error that denied the veteran some whole step in the adjudication process. *See Simmons*, 30 Vet.App. at 281-82 (compiling cases). Here, once appellant submitted his argument to the Board, there was no more participation available to him. He had seized every opportunity the process provides.

Here if the Court determined, after a full review of the record, that the Board *could* have found CUE in the 1971 decision, then appellant was prejudiced, and the Court would have to remand. But absent a showing of effect on the Board's ultimate CUE determination, there is no prejudicial error. In this context, the effect of error is assessed (or quantified) by applying set standards to facts and law fixed by the date of the decision being reviewed. In other words, an appeal to our Court and its obligation to provide a broad scope prejudicial error analysis cures any Board error here in not providing a full CUE analysis. *See Mayfield*, 19 Vet.App. at 129 (holding that the Court's review was "not hindered by any reasons-or-bases deficiency in the Board decision, and a remand for a reasons-or-bases error would be of no benefit to [appellant] and would therefore be pointless"); *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (concluding that where evidence is overwhelmingly against claim, remand for a reasons-or-bases deficiency would be superfluous).

Thus, we discern no prejudicial error in VA's full and fair processing of appellant's CUE allegation and find that appellant had a meaningful chance to participate effectively in the processing of his CUE motion. And so the Board's lack of manifest-change-of-outcome analysis in its adjudication of appellant's CUE allegation did not harm appellant's substantial rights. *See Sanders*, 556 U.S. at 410.

### D. Burden to Show Harm in the Board's Error

Finally, the appellant failed to show how the Board's error affected the outcome of the Board's CUE determination.

Though the Court has an independent duty to assess harm to an appellant based on an error in a Board decision, the appellant has the burden to show that prejudice. *See Sanders*, 556 U.S. at 409 ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) ("An appellant bears the burden of persuasion on appeals to this Court."), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table). An appellant must show how a claimed error in a Board decision harmed the outcome of her or his claim. *Sanders*, 556 U.S. at 410 ("[T]he party seeking reversal normally

must explain why the erroneous ruling caused harm[,] . . . by marshaling the facts and evidence . . . .").

Appellant, through counsel, chose to raise only legal challenges to the Board's decision and made the, presumably strategic, choice not to present any argument on prejudice to this Court. *See Robinson v. Peake*, 21 Vet.App. 545, 554 (2008) (presuming that "an experienced attorney in veteran's law[] says what he means and means what he says"), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). This is despite a Court order for appellant to respond to the Secretary's motion for full-Court consideration that specifically raised a challenge to the three-judge panel's prejudicial error analysis. March 18, 2020, Court order ("[F]ile a response to the Secretary's motion for full-Court consideration."); Secretary's Motion at 7 (alleging that "the Court overlooked relevant evidence and legal authority in its prejudicial error analysis"). Yet appellant declined to articulate to the Court how the Board's error on what could constitute CUE prejudiced his motion to revise the 1971 rating decision. Without more, the Court is left to divine argument for an appellant represented by experienced counsel at this Court. The Court will not fill in the blanks and identify possible prejudice in a Board decision for itself when it is the responsibility of counsel to do so. *See Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (per curiam), *vacated on other grounds sub nom. Coker v. Peake*, 310 F. App'x 371 (Fed. Cir. 2008) (per curiam order).

In sum, we find no prejudice in the Board's erroneous finding that appellant's CUE allegation was precluded by law. As appellant failed to show harm in the Board's legal error, the Court should affirm the September 2017 Board decision. *See Sanders*, 556 U.S. at 411-14; *see also King*, 26 Vet.App. at 441; *Fugo*, 6 Vet.App. at 43-44.

## VI. CONCLUSION

Although a majority of the Court agrees that the Board erred, a different majority concludes that the proper remedy in this case is to nevertheless affirm the Board decision. However, the Court is divided as to the reasons for affirmance. Accordingly, the Court VACATES the Court's September 27, 2019, panel decision and AFFIRMS the September 18, 2017, Board decision finding no CUE in the July 1971 rating decision.

35

TOTH, *Judge*, concurring: I agree that 38 C.F.R. § 20.1403(e) doesn't apply here because there has been no actual change in interpretation for Mr. Perciavalle to apply retroactively. So, the Board's rejection of his CUE motion on that basis was erroneous. I also agree that such error was harmless, as I don't see a way for Mr. Perciavalle to prevail on his CUE motion under the reasoning spelled out in *George v. McDonough*, 991 F.3d 1227 (Fed. Cir. 2021), and *Steele v. McDonough*, 856 F. App'x 878 (Fed. Cir. 2021).

(Before proceeding, it's necessary to address the proverbial elephant in the room: the peculiar circumstance presented by *Steele*, a nonprecedential opinion in which the Federal Circuit weighed in on this pending case and previewed both its ruling and reasoning were the matter to reach that court. Although not exactly the law of the case, *Steele* appears much the same as if we had certified the legal question to the Federal Circuit rather than hearing the matter en banc. Suffice it to say, a sneak preview of a potential appellate decision is an odd thing for a lower court to factor into its decisionmaking.)

That said, I read *George* and *Steele* as forming a one-two punch prohibiting CUE motions wherever the alleged legal error or disputable question of law was resolved by a court decision or official Agency publication (such as a General Counsel precedential decision) issued after the decision the veteran seeks to collaterally attack became final. Stated differently, *George* and *Steele* require that, in CUE motions claiming legal error, the error be undebatable at the time of the disputed decision; otherwise, the error can only be proven via the retroactive application of a later court ruling or Agency publication. And because retroactive application is forbidden, only legal errors known at the time of the underlying decision can support a collateral challenge for CUE.

This reading explains the rejection of counsel's argument in *George* that later court decisions may be relied on in the CUE context because they merely state what the law has always meant. 991 F.3d at 1236. *Steele* offers a succinct repudiation of this argument, concluding that, "whether an interpretation is a first interpretation or a change in existing interpretation, it cannot serve as the basis for CUE." 856 F. App'x at 881. This prohibition against an *initial* legal interpretation forming the basis of a CUE motion recognizes that the only way to prove CUE in such situations would be via retroactive application of a later authoritative pronouncement to a finally decided VA decision, which is not permitted. *Id.*

But instead of reading § 20.1403(e) to cover cases where there is no clear change in the interpretation of the law (e.g., from interpretation A to interpretation B), I read *George* and *Steele*

as effecting the broader point that an alleged legal error cannot satisfy the second CUE element—that the error is "undebatable"—where it has yet to be identified as erroneous by a court decision or VA publication. *See Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc) ("The words 'clear and unmistakable error' are self-defining. They are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made.").

Under this reading, it's irrelevant whether or not an interpretation presents a change from any predecessor; what matters is whether the claimed legal error was known at the time of the disputed underlying decision. And if nothing else, shifting the focus from retroactivity to what constitutes an undebatable error will relieve adjudicators from having to engage in abstruse speculations about whether a court decision interpreting a statute amounts to a change in law or whether it merely elucidates what the law has always meant, or whether one can, in fact, demonstrate legal error without consideration of the later decision where the error was identified.

As the author of the original panel opinion in this case, I still believe that the Board erred in characterizing Mr. Perciavalle's CUE motion as resting on a change in interpretation. However, *George* and *Steele* have since made clear that CUE is not available on the theory that Mr. Perciavalle presents, and so any Board error here must be harmless. For these reasons, I concur in the Court's decision.

ALLEN, *Judge*, with whom MEREDITH and FALVEY, *Judges*, join, concurring in the judgment: Although we concur in the Court's judgment that the Board's decision should be affirmed, we write separately because our path to affirmance bears no resemblance to that of the opinion co-authored by Judges Laurer and Jaquith. In short, we conclude that affirmance is warranted because the Board did not commit error. The opinion of the Court (in particular Part IV) concludes that the Board legally erred when it denied appellant's motion to revise a July 1971 rating decision based on CUE. However, the opinion determines that affirmance is nevertheless appropriate because the Board's error was harmless. As we will explain, we disagree with the Court's determination that the Board erred. It did not. Because we believe the Board reached the correct result as a matter of law, we cannot join anything more than the judgment of affirmance. Because we would affirm on the ground that the Board did not err, we do not reach the question whether any supposed error was harmless. For ease of reference, in the balance of this opinion we

37

will refer to the portion of the Court's opinion dealing with what it determines to be the Board's legal error as the "majority" because it represents the views of six Judges.[23]

The majority holds that "separate ratings for different knee disabilities were permissible in 1971, and the Board erred in suggesting otherwise."[24] Further, the majority holds that "[t]he Board also erred in characterizing 'a later interpretation of an existing regulation' as 'the only basis on which the Veteran asserts CUE,' and erred in concluding that the veteran's CUE assertion 'must be denied as a matter of law.'"[25] To get there, the majority reasons that, first, the Board mischaracterized appellant's CUE theory.[26] According to the majority, appellant's CUE motion[27] "does not depend on the retroactive application of *Esteban* or the OGC opinion"; rather, his CUE motion depends on the allegation that "VA's interpretation of the plain meaning of the law at the time of the rating decision was clearly and unmistakably erroneous."[28]

Next, the majority reasons that neither the 1997 precedential VA GC opinion nor *Esteban v. Brown* was a change in the interpretation of the rating-schedule and anti-pyramiding regulations. The 1997 precedential VA GC opinion formally stated that a claimant could receive separate ratings for knee arthritis and instability under their respective diagnostic codes and that those separate ratings do not constitute pyramiding.[29] According to the majority, the VA GC opinion did not constitute a change in interpretation because no interpretation preexisted the VA GC opinion and the opinion was based on the regulations' plain terms.[30] Nor was a change rendered by *Esteban v. Brown*, in which this Court held in 1994 that "distinct and separate symptom[at]ology arising from the same injury should be rated separately."[31] The majority reasons that *Esteban* "cannot be deemed a change in interpretation" because "*Esteban* neither proposed an interpretation of a

---

[23] Chief Judge Bartley and Judges Pietsch, Greenberg, Toth, Laurer, and Jaquith agree on Parts I through IV of the Court's opinion concerning the purported Board error.

[24] *Ante* at 23.

[25] *Id.* (quoting R. at 6).

[26] *Id.* at 10.

[27] "[A]n assertion of [CUE] is a motion or a request, rather than a claim." *Hillyard v. Shinseki*, 24 Vet.App. 343, 355 (2011) (emphasis omitted), *aff'd*, 695 F.3d 1257 (Fed. Cir. 2012).

[28] *Ante* at 20 (citing *Berger v. Brown*, 10 Vet.App. 166, 170 (1997)).

[29] *Id.* at 10-11, 16-17.

[30] *Id.* at 16.

[31] *Id.* at 9, 17-20 (citing 6 Vet.App. 259, 261-62 (1994)).

regulation nor cited any existing interpretation; it merely applied the express provisions of §§ 4.14 and 4.25 to the facts presented."[32] In other words, according to the majority, *Esteban* merely stated what the law has always meant.

### A. Characterization of Appellant's CUE Theory

We believe the majority is wrong no matter how one views this appeal. All else (for the majority) flows from the majority's conclusion that the Board mischaracterized appellant's CUE theory, so that is where we will begin. The only way that the majority can conclude that the Board mischaracterized appellant's CUE theory is by glossing over appellant's assertion before the Board that *Esteban* merely "clarified" what the law has always been, and, "[t]herefore, there is no bar to the *retroactive* effect of *Esteban*," citing a Federal Circuit decision regarding retroactivity.[33] We cannot fault the Board for taking cues from appellant's use of legal terms of art.[34] The Board did not mischaracterize appellant's CUE theory in form or, as we explain next, in substance.

Though the characterization of the CUE motion matters greatly to the majority, it matters not at all to us. Even if we ignore appellant's explicit references to retroactivity, we would hold that the Board did not err for two reasons: (1) Appellant failed to state what we'll call a *Berger* CUE motion; and (2) the Board correctly recognized and denied as a matter of law appellant's CUE theory as, if anything, retroactivity.

In *Berger*, this Court reiterated that "the regulation that establishes CUE . . . preclud[es] new interpretations of the law from being the basis of revising decisions."[35] And the Court took the occasion "to specifically hold that opinions from this Court that formulate new interpretations of the law subsequent to an RO decision [that is the subject of a CUE challenge] cannot be the basis of a valid CUE [motion]."[36] But the Court concluded by articulating

> one theory upon which CUE could be based: If the RO's interpretation of the plain meaning of the law was clearly and unmistakably erroneous . . . , then there may be a basis for a CUE motion. On the other hand, if it was a plausible interpretation, in

---

[32] *Id.* at 17-20.

[33] R. at 13-14 (emphasis added) (citing *Princess Cruises, Inc. v. United States*, 397 F.3d 1358 (Fed. Cir. 2005)).

[34] *See* R. at 5-6 ("The Veteran argues that *Esteban* and the General Counsel opinion clarified existing regulations as opposed to changing them and so their interpretation should have retroactive effect.").

[35] *Berger*, 10 Vet.App. at 170 (citing 38 C.F.R. § 3.105 (1996)).

[36] *Id.*

the context of the body of law that existed [at the time of the decision allegedly containing CUE], then there is no basis for such a claim.[37]

This cognizable, incorrect-application CUE theory is what we call, for short, a *Berger* CUE motion and what the majority says appellant alleged before the Board.[38]

But appellant did not assert a *Berger* CUE motion—or at least the Board did not err in failing to recognize such a request. Before the Board, contrary to the majority's holding, appellant failed to state a *Berger* CUE motion because he failed to make any semblance of an allegation about how, in the context of the body of law that existed in 1971, the 1971 RO could not have plausibly interpreted the rating schedule and anti-pyramiding regulations in his case to preclude the separate ratings appellant sought.[39] CUE will cease to be a specific and rare kind of error if we hold claimants to such a lesser pleading standard and require VA not only to adjudicate on the merits undeveloped theories but to supply in its entirety the missing legal argument.[40]

To state and consider a *Berger* CUE motion—without corrupting the inquiry into direct or plenary review, which is not a proper CUE inquiry—a claimant and the Board must pretend that they exist in the time the decision allegedly containing CUE was rendered, without the benefit of any later law or interpretation.[41] That is the context in which a claimant must allege how, and the Board must decide whether, the Agency decisionmaker made a clear and unmistakable error.[42] To reason in such a mindset is difficult, to be sure; it is all too easy to draw on later, "clarify[ing]"[43] law or interpretations. But to stay faithful to the nature of CUE, one must fight the urge. And it is certainly not impossible. In fact, trial judges do something similar all the time, when they hold

---

[37] *Id.*

[38] *See ante* at 20 (citing *Berger*, 10 Vet.App. at 170) (holding that "a motion alleging that VA's interpretation of the plain meaning of the law at the time of the rating decision was clearly and unmistakably erroneous states a valid CUE [motion].").

[39] *Berger*, 10 Vet.App. at 170.

[40] *Acciola v. Peake*, 22 Vet.App. 320, 328 (2008) (holding that merely citing a general entitlement statute or regulation is insufficient to allege a specific CUE theory and explaining that to accept such broad pleadings would create a "pleading gimmick" placing undue burden on the Secretary to invent CUE theories to adjudicate).

[41] *See Berger*, 10 Vet.App. at 170.

[42] *See id.*

[43] R. at 13-14.

bench trials. In bench trials, judges hear objections, exclude evidence, and must make decisions based on admissible evidence only, pretending they never heard or saw the inadmissible evidence.

Relatedly, and also under *Berger*, it is simply not enough to state, as the majority does and appellant did in a conclusory way before the Board, that in 1971 the regulations "permitted" separate ratings.[44] Rather, at the bare minimum, appellant must have somehow alleged that, in the context of the body of law that existed in 1971, the 1971 RO's interpretation and application of controlling law were *implausible* given the circumstances of his case.[45] Specifically, here, that a purported, implicit interpretation and application of the rating schedule and anti-pyramiding regulations, under which the 1971 RO failed to award separate ratings, was *implausible*. Even if he did not speak in terms of plausibility, he could have adequately pled the *Berger* CUE motion in substance in one of two ways.

One way was to attempt to analyze the regulations' plain language to show how the RO's interpretation was clearly and unmistakably wrong.[46] But appellant did not do that. He did not explain how in 1971 the regulations' plain language was not "susceptible of differing interpretations depending, as is true in most cases, on the facts that [were] to be applied to the law";[47] or, in other words, how in 1971, "reasonable minds could [not have] differ[ed] concerning the 'correct' interpretation" or reconciliation of the rating schedule and the anti-pyramiding regulations.[48] Instead he was nothing but conclusory in saying that he should have received separate ratings.[49] And the majority's analysis does him no favors; the majority's attempt to analyze the regulations' plain language on appellant's behalf involves legion citations to post-1971 law and interpretations.[50] Such citations could certainly provide context in terms of determining what the

---

[44] *Ante* at 23; R. at 13.

[45] *See Berger*, 10 Vet.App. at 170; *cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). *Twombly* is an apt comparison because, ultimately, Federal complaint pleading standards are all about notice, *see Twombly*, 550 U.S. at 555, and the majority's entire position depends on the assumption that the Board had adequate notice that appellant was alleging a *Berger* CUE motion, not retroactive application of *Esteban* or the VA GC opinion, and thus should have addressed that claim.

[46] *See Berger*, 10 Vet.App. at 170.

[47] *Id.*

[48] *Id.*

[49] *See* R. at 13-14, 101-02.

[50] *See ante* at 8-9 (citing cases from 1993, 2006, 2011, and 2017 to explain how to reconcile the regulations as of 1971), 20-21 (citing *Saunders v. Wilkie*, 886 F.3d 1356, 1363 (Fed. Cir. 2018) (explaining the definitions of and

law was at an earlier time. But the majority appears to use them here to show what the law actually was in 1971.

Alternatively, to state a *Berger* CUE motion in substance, appellant could have produced a contemporaneous interpretation that reconciled the regulations in his favor. But he did not do that either. The Board found that "[appellant] has not provided any evidence that, in July 1971, VA interpreted the rating schedule to allow for separate ratings for limitation of motion and instability of the same knee."[51]

Because appellant did not evoke *Berger* in form or in substance before the Board—he did not cite *Berger*, use terms of art evocative of *Berger*'s standard, analyze the regulations' plain language, or produce a contemporaneous interpretation—as a matter of law, appellant did not allege a *Berger* CUE motion. And the majority went too far in holding that he did.[52] Therefore, the Board did not err in failing to recognize a *Berger* CUE motion—because there wasn't one.

Mind you, our position is not that appellant must have used magic words to state a *Berger* CUE motion. But this Court cannot hold the Board to the impossible standard of recognizing a CUE allegation that was not properly pled in form or in substance. To the extent appellant intended to allege a *Berger* CUE motion, his request was sorely underdeveloped to the point of being unrecognizable. No amount of more sympathetic reading or development would have changed that.[53] Neither the Board nor this Court is required to create esoteric legal arguments for claimants.

---

relationships among regulatory terms by relying at times on noncontemporaneous authorities)).

[51] R. at 5. The closest anyone comes to making such a showing is the majority citation to a U.S. Court of Claims case from 1964 that concerns actions of the Secretary of the Air Force and the Air Force Board for the Correction of Military Records. *See ante* at 9-10 (citing *Wolf v. United States*, 168 Ct. Cl. 24, 31 (1964)). To the extent this decision is relevant at all—and recall appellant did not cite it—it does not appear the majority argues that this Court of Claims decision established the operative rule VA followed at the time of the 1971 decision. And, in any event, as we discuss below, it does not appear that *Wolf*'s 1964 interpretation of rating intestine symptoms was VA's interpretation of rating knee symptoms before 1997. *See infra* note 55.

[52] *See ante* at 20.

[53] *See Acciola*, 22 Vet.App. at 326 (holding that though "a sympathetic reading of a CUE motion requires the Secretary to fill in omissions and gaps that an unsophisticated claimant may leave in describing his . . . specific dispute of error with the underlying decision," a sympathetic reading does not require "the Secretary to imagine ways in which the original decision might be defective"); *see also Andrews v. Nicholson*, 421 F.3d 1278, 1282-83 (Fed. Cir. 2005) ("Although CUE [motions] must be pled with specificity, 38 C.F.R. § 20.1404(b) (2004), *Roberson* [*v. Principi*] requires the RO and the Board to 'fully and sympathetically' develop a veteran's pro se CUE motion 'to its optimum before deciding it on the merits.' *Roberson*, 251 F.3d [1378, 1384 (Fed. Cir. 2001)]. Quite simply, the VA's duty to sympathetically read a veteran's pro se CUE motion to discern all potential claims is antecedent to a determination of whether a CUE claim has been pled with specificity.").

Nor is it prudent to do so. Unlike compensation claims, which can be readjudicated or reconsidered,[54] the preclusive effect of res judicata bars relitigation of previously adjudicated CUE allegations.[55] For this reason, a VA regulation requires that non-specific allegations of CUE be dismissed without prejudice.[56] By creating, reviewing, and affirming as to appellant's non-existent *Berger* CUE motion, this opinion may "preclude[] VA from hearing any related future argument, because there is now a final denial of this portion of his CUE motion by the Court."[57]

## B. Retroactivity

Which brings us to our second reason (really, the other side of the coin) why, even if we ignore appellant's explicit references to retroactivity, the Board did not err in denying the motion as a matter of law: In substance, "the only basis on which the Veteran asserts CUE" is retroactivity masquerading as a *Berger* CUE motion, to put it generously.[58] Retroactivity by any other name is still retroactivity.[59]

Appellant's CUE motion was retroactivity in all but name because, as the Board said,[60] the request depended on the retroactive application of a "later-in-time"[61] interpretation, as evidenced by either *Esteban* or the VA GC opinion. And that is not a cognizable CUE theory. *Esteban* and

---

[54] *See* 38 C.F.R. § 3.156 (2021).

[55] *See Link v. West*, 12 Vet.App. 39, 44 (1998) ("Under the principle of res judicata, '[o]nce there is a final decision on the issue of [CUE] . . . that particular [request for revision on the basis of CUE] may not be raised again.'" (quoting *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc))).

[56] 38 C.F.R. § 20.1404(b) (2021) (providing that the Board must dismiss without prejudice when a CUE motion lacks the requisite pleading specificity); *see Canady v. Nicholson*, 20 Vet.App. 393, 400 (2006) (noting that a request for revision that fails to comply with the pleading requirements "'shall be dismissed without prejudice to refiling'" (quoting 38 C.F.R. § 20.1404(b))). We recognize that 38 C.F.R. § 3.105(a)(1)(vii)(B) is the governing regulation in this matter because the Board is reviewing appellant's assertion of CUE in an RO decision. We cite § 20.1404(b) to provide more general context concerning CUE motions and the requirement that CUE be alleged with specificity. *See* 38 C.F.R. § 3.105(a)(1)(vii)(B) (2021) (requiring specific allegations of CUE); 38 C.F.R. § 20.1404(b) (same). The difference between these regulations is immaterial for purposes of the resolution before the Court.

[57] *Lamb v. Peake*, 22 Vet.App. 227, 238 (2008) (Schoelen, J., concurring in part and dissenting in part).

[58] R. at 5-6.

[59] "What's in a name? that which we call a rose [b]y any other name would smell as sweet[.]" WILLIAM SHAKESPEARE, ROMEO AND JULIET act II, sc. II, l. 43-44, *accessible at* http://shakespeare.mit.edu/romeo_juliet/romeo_juliet.2.2.html (last accessed June 8, 2021).

[60] R. at 5-6.

[61] *George v. McDonough*, 991 F.3d 1227, 1234 (Fed. Cir. 2021) ("*Jordan*[ *v. Nicholson*, 401 F.3d 1296 (Fed. Cir. 2005)], in view of [*Disabled American Veterans v. Gober*, 234 F.3d 682 (Fed. Cir. 2000)], squarely forecloses Appellants' argument that *Wagner*[ *v. Principi*, 370 F.3d 1089 (Fed. Cir. 2004),]'s later-in-time interpretation of [38 U.S.C.] § 1111 can serve as the basis for CUE."), *petition for cert. filed*, No. 21-234 (U.S. Aug. 13, 2021).

the VA GC opinion are changes in the law, novel interpretations of the law, or authoritative statements—no matter which way one views them, they cannot be applied retroactively to establish CUE.[62] Therefore, and as we'll explain further, based on the Federal Circuit's decisions in *George v. McDonough*, *Steele v. McDonough*, and *Jordan v. Nicholson*, as well as this Court's decisions in *Lamb v. Peake* and *Berger v. Brown*, we would hold that the Board's denial of appellant's CUE motion as a matter of law under 38 C.F.R. § 20.1403(e)[63] was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[64]

"[CUE] does not include the otherwise correct application of a statute or regulation where, subsequent to the Board decision challenged, there has been a change in the interpretation of the statute or regulation."[65] "CUE must be analyzed based on the law as it was *understood at the time* of the original decision and cannot arise from a subsequent change in the law or interpretation thereof to attack a final VA decision."[66]

Those CUE principles complement each other, and the Federal Circuit's recent decisions in *George* and *Steele* instruct us on how they come to bear on this appeal. In *George*, the Federal Circuit affirmed a decision of this Court "[b]ecause *Jordan v. Nicholson* and *Disabled American Veterans v. Gober* [(*DAV*)] establish that a legal-based CUE requires a misapplication of the law as it was understood at that time, and cannot arise from a subsequent change in interpretation of law by the agency or judiciary."[67] That holding depended on the Federal Circuit's rejection of the claimant's attempt to circumvent the bar on retroactivity by relying on a later judicial interpretation that, according to the claimant and the dissenting judge from this Court, merely provided an "authoritative statement" of what a law has "always meant."[68]

Less than a month later, in an unpublished decision, *Steele*, the Federal Circuit again rejected a claimant's argument that was nearly identical to the one made in *George*—and, this time,

---

[62] *See George*, 991 F.3d 1227; *Jordan*, 401 F.3d 1296; *Steele v. McDonough*, 856 F. App'x 878 (Fed. Cir. 2021); *Lamb*, 22 Vet.App. 227; *Berger*, 10 Vet.App. at 170.

[63] R. at 5-6.

[64] 38 U.S.C. § 7261(a)(3)(A).

[65] 38 C.F.R. § 20.1403(e) (2021).

[66] *George*, 991 F.3d at 1234 (emphasis in original); *see Lamb*, 22 Vet.App. at 234-35.

[67] 991 F.3d at 1229.

[68] *Id.* at 1231-32, 1234, 1236.

that was explicitly reliant on the reasoning in this Court's panel decision in *Perciavalle v. Wilkie*, 32 Vet.App. 59, 65 (2019), that "a changed interpretation cannot be the 'first commentary' on a regulation or statute as there exists no precursor interpretation that the latter modifies, alters, or replaces."[69] The Federal Circuit's reasoning was short and sweet:

> We recently clarified in *George v. McDonough* that whether an interpretation is a first interpretation or a change in existing interpretation, it cannot serve as a basis for CUE. 991 F.3d 1227, 1235 (Fed. Cir. 2021) ("That *Wagner* was the first judicial interpretation of § 111[1] by this court does not lead to a contrary result."). We expressly noted in *George* that our precedent does not support the view that a new judicial pronouncement can retroactively apply to final decisions of the VA. *Id.* at 1236-37. Consequently, we need not decide whether *Saunders* was an authoritative statement or a change in interpretation because neither can form the basis for CUE.[70]

Labels aside, we see no daylight between the substance of the losing arguments in *George* and *Steele* and the substance of the argument that appellant and the majority make in this case. If there is a difference, it is a product of wordsmithing. Essentially, appellant and the majority want to have their cake and eat it too: They make pronouncements about what the law meant in 1971 that derive from *Esteban* and the VA GC opinion, but they refuse to credit *Esteban* or the VA GC opinion for what now seems self-evident to them thanks to *Esteban* and the VA GC opinion. Never mind that the 1971 RO did not have the benefit of *Esteban*'s or the VA GC opinion's interpretation when it made its decision. Such reasoning flies in the face of the retroactivity principles that the Federal Circuit reiterated in *George* and *Steele*, as well as the exact reasoning that the Federal

---

[69] The *Steele* court further provided:

> On appeal, Mr. Steele argues that the RO decision was CUE because it was not based on the law that applied at the time the decision was reached. Specifically, Mr. Steele contends that our holding in *Saunders* [*v. Wilkie*, 886 F.3d 1356 (Fed. Cir. 2018),] has retroactive application because it is not a statutory interpretation, but rather an authoritative statement of the law as it existed when the RO rendered its decision. According to Mr. Steele, unlike a statutory interpretation that provides a new understanding or meaning to the law, an authoritative statement has retroactive-like effect because it explains the meaning of the law existing before any subsequent interpretations. In support, Mr. Steele cites [this Court's] decision in *Perciavalle v. Wilkie*, 32 Vet. App. 59 (2019), arguing that the decision distinguishes between an authoritative statement and a subsequent statutory interpretation. Appellant [Brief at] 7; *see also Perciavalle*, 32 Vet. App. at 65 ("[A] changed interpretation cannot be the 'first commentary' on a regulation or statute as there exists no precursor interpretation that the latter modifies, alters, or replaces[.]"). Mr. Steele therefore contends that the RO's failure to apply *Saunders* resulted in a misapplication of the statute or regulation then in effect. We disagree.

856 F. App'x at 881.

[70] *Id.*

Circuit used to reject the *George* and *Steele* claimants' arguments. It does not matter how one characterizes the interpretation that appellant and the majority derive from *Esteban* or the VA GC opinion—that interpretation cannot form the basis of a CUE motion.

## C. Changed or Novel Interpretation

But supposing we misunderstand the impact of *George* and *Steele*'s one-two punch, we would still hold that *Esteban* or the VA GC opinion constituted a change in interpretation under *Jordan* or a recent or novel interpretation under *Lamb*. And neither can support a CUE motion.

Let's begin with the change in the law *Esteban* wrought. Here, as in *Jordan*, "the interpretation of [38 C.F.R. § 4.14] has indeed changed, but because the [1971 rating] decision was final, Mr. [Perciavalle] has no recourse for appeal through a CUE [motion]; 38 C.F.R. § 20.1403(e) clearly proscribes Mr. [Perciavalle]'s claim."[71] In *Jordan*, the Federal Circuit held that § 20.1403(e) applied because a change in the interpretation of a statute had occurred.[72] There a "regulation . . . provide[d] the first commentary on [the statute], and was therefore the initial interpretation."[73] The change in interpretation occurred when VA's General Counsel issued an opinion "stating that [the regulation] . . . conflicted with the language of [the statute]."[74] In other words, through the regulation, "VA [had] interpreted [the statute] contrary to its facially apparent meaning."[75] Even so, the Federal Circuit held that a facially incorrect interpretation of the governing legal standard is still an interpretation for purposes of § 20.1403(e).[76]

Here too, though our frame of reference is a regulation, not a statute as in *Jordan*, we can point to evidence of an initial interpretation: VA was denying separate ratings for different conditions seemingly related to the same injury or body part because it understood § 4.14 to preclude additional ratings as pyramiding.[77] That informal interpretation of § 4.14 does not cease

---

[71] 401 F.3d at 1299.

[72] *Id.* at 1298.

[73] *Id.*

[74] *Id.*

[75] *Id.* at 1297.

[76] *Id.* at 1298.

[77] *E.g.*, *Fanning v. Brown*, 4 Vet.App. 225, 228, 230-31 (1993) (recognizing that "[t]he [Board] properly raised the issue of pyramiding" under § 4.14 when it denied separate ratings for a tender scar and the residuals of a right inguinal hernia, but remanding the case for an explanation of reasons or bases); *Sweeney v. West*, 16 Vet.App. 403 (table), 1999 WL 184869, at *2 (denying an Equal Access to Justice Act (EAJA) application when "the Court [could not] find that the Secretary's position at the administrative level was not substantially justified" because the VA General Counsel

to be the initial one just because, appellant would say, in those cases "VA interpreted [§ 4.14] contrary to its facially apparent meaning."[78] A change in the Agency's interpretation of § 4.14 (focusing on the injury or disability) occurred in 1994 when this Court in *Esteban* held that § 4.14 permitted separate ratings when "*none* of the symptomatology for any one of [the] conditions [at issue] is *duplicative* of or *overlapping* with the symptomatology of the other . . . conditions."[79] VA lacked the benefit of that interpretation before *Esteban*. So, under § 20.1403(e) and as in *Jordan*, appellant cannot request CUE as a matter of law because the RO's 1971 denial of appellant's claim was otherwise correct under § 4.14 as VA seemingly initially understood and interpreted it and seems incorrect *only* based on a later and different interpretation of § 4.14.[80]

The majority avoids this logic largely because it assumes that only a "formal" interpretation counts for purposes of § 20.1403(e).[81] But nothing in § 20.1403(e) says so, and we would not read

Precedent Opinion 23-97 "change in regulatory interpretation *after* the [Board] decision on appeal was the sole reason for the remand"); *Sanders v. Principi*, 3 Vet.App. 334, 336-37 (1992) (mem. dec.) (affirming the Board's application of § 4.14 to rate multiple same-knee conditions under a single DC).

[78] *Jordan*, 401 F.3d at 1297-98.

[79] 6 Vet.App. at 261-62 (emphasis in original), *superseding Esteban v. Brown*, 1993 U.S. Vet. App. LEXIS 545, at *1 (Oct. 5, 1993) (affirming the Board's finding that "the applicable regulations do not allow a veteran to obtain an increased rating by aggregating ratings for separate symptoms which collectively constitute one injury; therefore, appellant may not receive separate ratings for each of his symptoms").

Both appellant and the majority put a lot of weight on the VA GC 23-97 opinion's statement that the General Counsel "kn[e]w of no formal position taken by the Veterans Benefits Administration on [the] issue" "whether symptoma-tology [sic] for a rating under DC 5257 is duplicative or overlap[]ping with the symptomatology for a rating under DC 5010 and 5003." VA Gen. Coun. Prec. 23-97, at 1 (July 1, 1997) [hereinafter G.C. Prec. 23-97]. They understand that statement to mean that the General Counsel knew of no formal, initial interpretation of § 4.14. Appellant's Br. at 4; *ante* at 21. But theirs is not the only possible reading; one could alternatively read G.C. Prec. 23-97 to say that the General Counsel knew of no formal position taken on how *Esteban*'s interpretation of § 4.14 applied to DCs 5257, 5010, and 5003. This reading is possible because G.C. Prec. 23-97 cites *McAdory v. Brown* as the case directing the Board to consider the issue. G.C. Prec. 23-97, at 1. And *McAdory* cited *Esteban* in its statement of the issue to be addressed on remand. No. 96-1172, 1997 WL 288699, at *2 (Vet. App. May 2, 1997). So then, G.C. Prec. 23-97 does not necessarily do the work that appellant and the majority would have it do.

[80] We do not maintain that one could never establish CUE based on the plain language of a regulation or statute even if a later judicial decision (or other authoritative source) adopted a given meaning of the regulation or statute based on its plain language. *See Berger*, 10 Vet.App. at 170. For example, one might show that the overwhelming Agency practice at the time of the decision in which CUE is alleged was in accord with the plain language. In other words, one could show that an individual adjudicator in a particular veteran's case did not follow what the Agency generally understood the regulation or statute at issue to mean at the time, even though there was no judicial or authoritative Agency position on the matter. However, that is not the case here.

[81] *See, e.g.*, *ante* at 17 ("Before analyzing the question presented—whether the rating schedule authorized separate ratings for arthritis and instability of the knee—the VA GC opinion readily acknowledged that this was the first agency interpretation, noting that: 'We know of no formal position taken by the Veterans Benefits Administration on this issue.' VA Gen. Coun. Prec. 23-97. This point is dispositive: there can be no 'change' in interpretation absent an existing interpretation from which a later interpretation deviates.").

such a requirement into the regulation. In addition to the interpretive principle that courts should not add terms to a law, [82] it doesn't make sense that merely because there is no "formal" interpretation there is no interpretation at all. And, in light of memorandum decisions we reviewed,[83] along with the VA GC opinion and the outcome in appellant's case, it appears that VA generally did not rate such conditions separately before the mid-to-late 1990s. Given the limited evidence on the matter, though, VA adjudicators may have applied the regulation inconsistently. Either way, *Esteban* or the VA GC opinion was a change by establishing a consistent Agency position.

We would reach the same conclusion, that the Board did not err, even if we assumed that the majority was correct that there must have been a formal Agency position for there to have been a "change" in the law. The reason is our decision in *Lamb*, on which the Board relied.[84] In *Lamb* we held in part, based on *Jordan* and § 20.1403(e), that "a recent or novel interpretation of law cannot be used to support a CUE motion, because any interpretation would not change what the law was understood to mean at the time of the original decision."[85] (*Lamb*'s holding is nothing revolutionary; it is a corollary of the well-established principle that "CUE must be analyzed based on the law as it was *understood at the time* of the original decision"[86]) In other words, under *Lamb*, appellant cannot support his CUE motion with his purportedly own present-day "interpretation" of the law that supports his entitlement to separate ratings—whether derived from *Esteban* or the VA General Counsel opinion or the regulations' plain language—because if there was no preexisting interpretation, these are all recent or novel interpretations under *Lamb*.[87] And without those borrowed interpretations, appellant is left empty-handed. As we've already noted, and as the Board

---

[82] *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010) (declining to read into a statute an express limitation that Congress did not include in the statute's plain language and holding that the Court of Appeals' decision to add one "more closely resembles 'invent[ing]' a statute rather than interpret[ing] one'" (quoting *Pasquantino v. United States*, 544 U.S. 349, 359 (2005)).

[83] *See supra* note 55.

[84] R. at 6.

[85] *Lamb*, 22 Vet.App. at 235; *see Berger*, 10 Vet.App. at 170.

[86] *George*, 991 F.3d at 1234 (emphasis in original); *see Lamb*, 22 Vet.App. at 234-35.

[87] In *Berger*, this Court similarly held that *Gregory v. Brown*'s new, later-in-time interpretation of the law at issue was legally irrelevant to the Court's consideration of the incorrect-application CUE motion because *Gregory* postdated the challenged RO interpretation, even though "[t]here was no exegesis or citation of authority for [*Gregory*'s] interpretation," suggesting that this Court did not entertain a subsequent interpretation even if it purported to be based on a law's plain language and meaning. 10 Vet.App. at 170 (citing *Gregory*, 5 Vet.App. 108, 112 (1993)).

noted, appellant points to no contemporaneous interpretation to show that in 1971 VA—or anyone else for that matter—understood the law to entitle him to separate ratings for arthritis and instability of the same knee.[88] That was his burden to bear and he failed to carry it. All in all, the Board correctly applied *Lamb* and § 20.1403(e).[89]

And so, even after a thorough review of the law and record, even after oral argument, even after reading the majority opinion, we still fail to see how appellant's CUE theory is any different from a request for "a retroactive remedy for [a] final judgment[]."[90] If appellant can proceed with his incorrect-application CUE theory without showing that in 1971 the law was understood to entitle him to separate ratings, the only remaining standard of comparison is the law as it is understood today. And to apply a present-day standard to a decades-old final decision is antithetical to CUE and the distinction between direct and collateral review. So, we cannot fault the Board for using the term "retroactive" in reference to appellant's theory. And, let's not forget: Before the Board, appellant argued that *Esteban* merely "clarified" what the law has always been and, "[t]herefore, there is no bar to the retroactive effect of *Esteban*," citing a Federal Circuit decision regarding retroactivity.[91] But no matter—call it retroactivity or not, the bottom line is that neither appellant's CUE theory nor the Court's holding of legal error "accord[s] sufficient respect to a final judgment."[92]

### D. Board's Reasoning

One last note: some food for thought for the Board. There are times when a case requires a complex analysis. As much as decisionmakers might like, we can't avoid wrestling with esoteric legal reasoning on occasion. But there are equally times when a case is straightforward as it appears at first blush. We think this is one of those cases. But the Board missed the simple approach, and that in many respects led to today's en banc decision.

---

[88] R. at 5.

[89] R. at 5-6. The majority does not purport to overrule *Lamb*, so we take it that it still states what the law is.

[90] *Jordan*, 401 F.3d at 1299.

[91] R. at 14 (citing *Princess Cruises, Inc.*, 397 F.3d 1358).

[92] *Jordan*, 401 F.3d at 1299.

In its decision on appeal, the Board relied on esoteric legal reasoning to deny appellant's CUE motion as a matter of law.[93] That reasoning led to an extensive legal debate in this Court, which yielded a holding that opens the floodgates to what we believe to be an entirely new class of CUE motions.

And for what? Appellant cannot show that in 1971 his own record undebatably *raised* an issue of separate ratings—that in 1971 he had two conditions that could have been rated separately.[94] The 1971 rating decision says nothing about the rating schedule or separate ratings or pyramiding. What it does say is, "The *evidence* does not warrant any change in the previous determination. Your left knee condition remains 10% disabling and you will continue to receive compensation for this disability."[95]

We cannot see how anyone could claim, let alone find clearly and unmistakably, that the 1971 RO incorrectly applied the law extant at the time based on such a sparse explanation. As we see it, appellant's CUE motion at its heart was nothing more than a dispute over how the 1971 RO weighed the evidence, which cannot be CUE.[96] Had the Board said that or assumed, without deciding, that appellant's CUE theory was legally tenable and concluded (or reasoned in the alternative) that appellant simply failed to show a clear and unmistakable error because the facts weren't there, this en banc Court would have had no occasion to announce the legal rule it does today.[97]

We are not criticizing the Board's decision for the sake of criticizing. Rather, we are highlighting a dynamic that could go overlooked, one that could recur: The majority may have opened the CUE floodgates, but the Board unnecessarily and avoidably unlocked them.

With all that said, we believe the Board did not err and we would affirm the decision on appeal on that basis. So, we concur only in the judgment of affirmance.

---

[93] R. at 6.

[94] *Ante* at 28-29.

[95] R. at 490 (emphasis added).

[96] *Berger*, 10 Vet.App. at 169 ("To the extent that the attack on a final decision is based on a disagreement with how the adjudicator weighed the facts, then it cannot constitute CUE.").

[97] Judges Lauer and Jaquith recognize this fundamental point, but consider it only as a reason to find any error in the Board's decision harmless. But we see the issue as more fundamental, going to the merits of the CUE assertion in the first place.

BARTLEY, *Chief Judge*, with whom PIETSCH and GREENBERG, *Judges*, join, dissenting in the judgment: I agree with Part IV of the decision, explaining that the Board erred in denying Mr. Perciavalle's CUE motion as not legally valid. I disagree with Part V however, and write separately to explain why the Board error prejudiced the veteran and why this matter should be returned for the Board to conduct a proper CUE adjudication that addresses the specific CUE motion filed in March 2015—without erroneously characterizing it as a request for retroactive application of new law.

The veteran's non-attorney representative argued in the March 2015 CUE motion that the July 1971 RO decision contained CUE in failing to revise Mr. Perciavalle's 10% disability evaluation under DC 5259, contemplating symptomatic removal of semilunar cartilage, to a 10% evaluation under DC 5257 for lateral knee instability. R. at 101-02. Mr. Perciavalle based this argument on the fact that the RO in 1971 noted that he experienced knee instability due to an in-service meniscectomy but failed to compensate him for it. *Id*. The non-attorney representative also argued that the July 1971 decision erred in failing to award Mr. Perciavalle a separate 10% evaluation under DC 5003-5260 for degenerative changes (arthritis) and limitation of flexion, citing 38 C.F.R. §§ 4.40, 4.45, 4.59, and 4.71a.[98] *Id*. He argued that an x-ray report dated July 8, 1971, which was before the RO prior to the 1971 decision, "clearly" showed degenerative changes in the veteran's left knee. R. at 102; *see* R. at 492. The veteran has not as of this date received a decision responsive to this two-pronged CUE motion.

In the September 2015 rating decision and May 2017 SOC, the RO found no CUE because it determined that a 1997 VA GC precedent opinion[99] concerning assignment of separate evaluations for instability and limitation of motion was not in effect in 1971. R. at 94, 58. Those adjudications did not engage the veteran's arguments that at the time of the 1971 RO decision it was CUE under DC 5257 to fail to award a 10% evaluation for instability and also that it was CUE under DC 5003-5260 to fail to award a separate 10% evaluation for degenerative changes and limitation of flexion pursuant to §§ 4.40, 4.45, 4.59, and 4.71a. Instead of adjudicating the CUE motion based on the regulations and DCs cited by Mr. Perciavalle, which were in effect in 1971,

---

[98] Sections 4.40, 4.45, and 4.59 have not changed since 1971. Nor have the operative knee DCs.

[99] In the September 2015 decision, the RO mistakenly characterized this authority as a VA Office of Inspector General decision. R. at 94.

VA looked ahead 26 years to the issuance of the 1997 VA GC precedent opinion and made its decision to deny CUE on that basis.

> Before the Board, the veteran's lay representative again argued as follows:

> We contend that the law has always permitted that a separate evaluation can be applied for DC 5257 based on instability and a separate evaluation can be applied for loss of range of motion under DC 5003-5260 or due to pain/functional loss under 38 CFR §§ 4.40 [and] 4.59. All regulations that applied to this claim have not materially changed since 1971.

R. at 13-14. He argued that "corrective action should be taken . . . to correctly apply the law that was in existence at the time of the July 12, 1971, rating decision." R. at 14.

The September 2017 Board decision under consideration continued to misrepresent Mr. Perciavalle's CUE argument, stating that "the Veteran contends that a more recent interpretation of VA regulations should have retroactive effect." R. at 5. This is incorrect. The veteran in his CUE motion filed with the RO did not argue retroactive effect, R. at 101-02, nor did he make that argument in his NOD, R. at 76-77, or his Substantive Appeal, R. at 25. And in his informal brief to the Board, the veteran argued that, had the law in existence in 1971 been correctly applied, he would have received separate 10% evaluations. R. at 13. Nevertheless, the Board erroneously concluded that "[b]ecause a later interpretation of an existing regulation cannot constitute CUE[,] *and that is the only basis on which the Veteran asserts CUE,* the Veteran's motion must be denied as a matter of law." R. at 6 (emphasis added).

Some of my colleagues assert that the Board cannot be faulted for characterizing Mr. Perciavalle's argument as based on retroactivity. *Ante* at 39. They contend that no mischaracterization occurred because the veteran mentioned retroactivity in his informal brief to the Board. But Mr. Perciavalle's single reference to retroactivity, in his informal Board brief, was preceded by this sentence: "We are not arguing the 1997 General Counsel opinion or any VA rules after the 1971 rating decision." R. at 13 (emphasis removed). Thus, Mr. Perciavalle's lone reference to retroactivity occurred when he attempted to counter the RO's rationale for denying the CUE motion.

And more important, even were we to consider this single reference to retroactivity as a CUE allegation, caselaw clearly prevented the Board from considering it. No retroactivity argument was presented to the RO and, since each theory of CUE is a separate and distinct matter, a veteran is not allowed to make a "new" CUE argument at the Board when challenging an RO decision. *Andre v. Principi*, 301 F.3d 1354, 1361 (Fed. Cir. 2002); *Jarrell v. Nicholson*,

52

20 Vet.App. 326, 332 (2006) (en banc). Because Mr. Perciavalle's CUE motion, NOD, and VA Form 9 made absolutely no mention of retroactivity or argument concerning it, the Board erred in characterizing his CUE motion as based on retroactivity. Although a CUE movant may flesh out or recharacterize the argument, *see Jordan v. Principi*, 17 Vet.App. 261, 271 (2003), *aff'd sub nom. Jordan v. Nicholson*, 401 F.3d 1296 (Fed. Cir. 2005), the Board is not entitled to recharacterize a veteran's CUE arguments to suit their own needs and shoehorn his arguments into a theory that is legally nonviable. This Court should not sanction such Board action.

Some of my colleagues contend that regardless of the specific CUE arguments Mr. Perciavalle raised, his CUE motion was based on retroactivity in all but name. *Ante* at 43-46. They accuse the veteran of failing to explain why the regulations were susceptible only of a single interpretation, failing to explain why reasonable minds could not differ as to their correct interpretation, and failing to proffer a contemporaneous interpretation that reconciled the regulations in his favor. *Ante* at 41-42. But requiring a veteran who filed his CUE motion without assistance of counsel to include this degree of detail and minute specificity is antithetical to VA's duty to sympathetically read pro se pleadings, including CUE motions. *See Andrews v. Nicholson*, 421 F.3d 1278, 1282-83 (citing *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001); *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004)).

In addition, whatever my colleagues believe about the sufficiency of Mr. Perciavalle's pro se CUE motion, the Board didn't dismiss the motion as insufficiently pled. Instead, the Board, in contravention of its duty to "'fully and sympathetically' develop a veteran's pro se CUE motion 'to its optimum before deciding it on the merits,'" *id.* at 1282-83 (quoting *Roberson*, 251 F.3d at 1384), recharacterized the CUE motion as predicated on a legally nonviable basis and then denied the motion as a matter of law. Even if the lone reference to retroactivity created ambiguity as to the specific theory of CUE raised, the Board does not comport with "VA's duty to sympathetically read a veteran's pro se CUE motion to discern all potential claims," *id.* at 1283, when they resolve any ambiguity that exists in a manner unfavorable to the veteran, and in a manner that precludes its adjudication on the merits.

Moreover, my colleagues' view is particularly dangerous and runs counter to the well-established CUE rule that, once a veteran alleges a specific CUE, VA will address only that CUE argument. In *Acciola v. Peake*, we warned that reading a CUE motion expansively prejudices a veteran because it could result in a broad res judicata effect that would hinder a further attempt at

53

revising a purportedly erroneous decision. 22 Vet.App. 320, 326 (2008). It is incomprehensible that VA would require sufficient specificity in a CUE motion and in fairness to the veteran be confined to deciding solely the specific CUE argument raised, only to have the RO and the Board recharacterize the veteran's CUE argument to suit itself. There are untold risks ahead if VA is permitted to proceed in this manner. These risks include that a veteran's CUE contention will fail to be heard and adjudicated, as occurred in Mr. Perciavalle's case.

Given the above circumstances, any conclusion that Board error did not harm Mr. Perciavalle cannot stand. Part IV of the decision concludes that the Board erred by misstating and failing to sympathetically construe the veteran's motion, resulting in the Board failing to adjudicate the substance of the CUE motion. Despite this conclusion, my colleagues conclude in Part V that it is acceptable for this Court to undertake a merits analysis of the CUE motion in the first instance, under the guise of determining whether the Board error was harmless. But because the Board failed to adjudicate the CUE motion the veteran advanced, it is improper for us to proceed to address the merits of his motion, even under a harmless error analysis. "'The rule of harmless error cannot be invoked to allow the [Court] to decide a matter that is assigned by statute to the [VA] for the initial determination.'" *Tadlock v. McDonough*, 5 F.4th 1327, 1337 (Fed. Cir. 2021) (quoting *Winters v. Gober*, 219 F.3d 1375, 1380 (Fed. Cir. 2000)). "[N]or can the rule be invoked to support an affirmance that 'may [] have required it to make improper de novo findings of fact.'" *Id*. (quoting same). Yet in Part V my colleagues undertake the initial CUE analysis that is reserved to VA and do so despite acknowledging that the Board did not make factual findings to support an affirmance. *Ante* at 27.

Aside from it being improper for the Court to address the substance of Mr. Perciavalle's CUE motion in the first instance under the pretense of a harmless error analysis, *see Tadlock*, 5 F.4th at 1337, there is a separate reason that my colleagues' harmless error analysis fails. In *Simmons v. Wilkie*, this Court recognized that VA errors that affect essential fairness automatically prejudice veterans and claimants. These are errors that deprive veterans of a meaningful opportunity to participate and be heard in the adjudication process. 30 Vet.App. 267, 281-82 (2018), *aff'd*, 964 F.3d 1381 (Fed. Cir. 2020). *Simmons* provided examples of these types of errors, including VA's failure to provide notice of evidence necessary to substantiate a claim, *see Vazquez-Flores v. Shinseki*, 24 Vet.App. 94, 105-07 (2010), and VA's failure to provide a required hearing, *see Arneson v. Shinseki*, 24 Vet.App. 379, 388-89 (2011). We determined that these types of errors

have the natural effect of depriving claimants of meaningful participation and the opportunity to be heard during the VA adjudicatory process. *See Simmons*, 30 Vet.App. at 281-82 (citing *Shinseki v. Sanders*, 556 U.S. 396, 411 (2009)); *see also McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 553-54 (1984) (characterizing an error as prejudicial when it affects the essential fairness of the adjudication).

In Mr. Perciavalle's case we likewise confront an error that affects essential fairness—wrongly foreclosing a CUE motion by recharacterizing it as a request for retroactive application of law, which is barred by 38 C.F.R. § 20.1403(e) as a matter of law. That error automatically prejudiced the veteran because under that framework the Board was prevented from addressing and deciding the merits of Mr. Perciavalle's March 2015 two-pronged CUE motion or substantively reviewing the DCs and VA regulations in existence in 1971 that were referenced therein. Instead, the Board concluded that Mr. Perciavalle was legally barred from making his allegations of error because, by definition, they could never amount to CUE. But contrary to the Board's conclusion, Mr. Perciavalle's CUE motion was not based on the retroactive application of a change in law—in fact, he specifically disavowed such argument. R. at 13.

Veterans have a statutory right to a decision with respect to the claims and motions that they file. 38 U.S.C. § 511(a) ("The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the survivors or dependents of veterans."). Veterans also have a right to one review on appeal to the Secretary. 38 U.S.C. § 7104(a). With the RO and the Board mischaracterizing his CUE motion, Mr. Perciavalle was deprived of his rights under sections 511(a) and 7104(a) and has yet to receive an adjudication of the two-pronged CUE motion that he filed and the one review on appeal to which he is entitled.

These circumstances demonstrate that VA's actions prejudiced Mr. Perciavalle and that essential fairness, an indispensable element of the VA adjudication process, was absent. Because VA's process prejudiced the veteran, I do not agree with the Part V prejudicial error analysis, particularly as VA has yet to substantively address the merits of the CUE motion. Thus, I would remand the appeal for the Board to properly adjudicate the veteran's CUE motion.